Percy D. Stoddart, J.
The relator in a consolidated proceeding seeks to review the assessments on real estate for the five-year period commencing with the year 1946-1947 and ending with the year 1950-1951.
*602 The property in question is located between Fifty-seventh Avenue and Grand Avenue, near Seventy-fourth Street in the county of Queens. It forms but a small part of the relator’s gas manufacturing and distributing system within the counties of Kings and Queens.
For the first three years of the period under review, the respondents assessed the land at $62,500 and for the last two years at $71,000. The relator’s exhibit 11 shows that the original cost of the land was $62,243.33 — in 1910 or 1911 — assuming that the land was purchased immediately prior to the erection of the older of the two gas holders on the premises. Its expert witness values the land at $36,700 for each year, and the respondents’ expert fixes the value at $138,000 for the first two years and $161,000 for the last three years. After considering the basis of their testimony and the exhibits, I believe the land is worth at least the sum for which it has been assessed, and, therefore, no change will be made in the land assessments.
With respect to the improvements, however, I find there should be a change in the assessments. Citation of authority is unnecessary to sustain the statement that reproduction cost less depreciation is the upper limit for such assessments. The evidence provided by the relator’s experts appeals to the court as an accurate appraisal of those elements during the years involved. Their figures show the difference between those elements to be for 1946-1947 — $1,998,379; 1947-1948 — Í2,182,844 ; 1948-1949 —$2,308,380; 1949-1950 — $2,442,135; 1950-1951 — $2,352,563.
The question is: Should these differences constitute the assessments for the improvements or should other elements relating to the value of property be considered? It is recognized that real property should be assessed at its full value (Tax Law, § 8) and under ordinary circumstances the market value or price determines the value of the property (Heiman v. Bishop, 272 N. Y. 83). However, where as here, there is no market for the property, as it is being devoted to a special use, other elements of value may be considered.
It is the relator’s contention that the net income during the years 1946 through 1950 should be considered. But the income from the entire system of the relator and not of the subject property is given. Were it possible to show the volume of business directly connected with the subject property, and the return which could reasonably be expected or which was actually realized from this part of the relator’s business, there would not be the slightest hesitancy in considering such evidence in determining value.
*603 The relator cites People ex rel. Lehigh Val. Ry. Co. v. Harris (168 Misc. 685, affd. 257 App. Div. 912, affd. 281 N. Y. 786) and People ex rel. New York Cent. R. R. Co. v. Vincent (68 N. Y. S. 2d 202) in support of its contention that the earnings of the entire gas enterprise may be shown. Each of those proceedings involved assessments of a portion of a railroad system, and the volume of business, together with the income therefrom, of the entire system was shown and given great weight by the court. However, it was noted in People ex rel. Lehigh Val. Ry. Co. v. Harris (supra, p. 687) that business on the various branches within the town whose assessment was questioned had fallen off to such an extent that one branch was abandoned and on another the track mileage was reduced. In People ex rel. New York Cent. R. R. Co. v. Vincent, it is also stated (supra, p. 204) that an exhibit showing in detail the operating income of the relator within the area covered by the assessment was considered. Here, we have no exhibit showing that in the entire system the number of purchasers of gas or the quantity of gas purchased has been reduced. There is no evidence to show that full use is not being made of the property assessed. Under the facts of this proceeding, the court believes it more appropriate to follow the reasoning of People ex rel. Delaware, Lackawanna & Western R. R. Co. v. Clapp (152 N. Y. 490). That case also involved a small portion of a railroad. It was written on page 495: ‘ ‘ An assessment of the portion of the real estate of a railroad which is within the town and subject to the jurisdiction of the assessors, upon the basis of the income or profits of the whole system of which it is a part, must necessarily include the use of franchises and personal property which are otherwise assessed, and hence such a principle of valuation must, in some measure at least, impose double taxation. It is doubtless within the power of the state to authorize such a method of assessment, but it has not attempted to exercise such a power. The real estate, the personal property and the business and franchises are taxable under different statutes, and these three elements into which the corporate property is divided should not be commingled when it is reasonably possible to avoid it. When there is no question before the assessors save the value of that part of the real estate of a railroad which is within the town, the cost of replacing it will ordinarily furnish a just measure of valuation. The principle of assessing a few miles of railroad in a town according to the relations which it is supposed to bear to the whole of a vast and intricate system, or to the income or earning power of the entire system, draws into the calculation so many elements that the process becomes too complex and dif *604 ficult for even an expert. It is no disparagement of the capacity and intelligence of the average assessor to say that it would present to him a problem incapable of accurate solution and a rule of action in the performance of his official duty impossible in practice. The process virtually requires the assessors to assign to each mile of railroad its proportionate share of the income of the entire system and estimate the value of the real estate upon that basis ” (italics supplied).
The relator also contends that as the Public Service Commission in fixing the rate which the relator may charge has used the original cost of the improvements in making its computations, the assessors should use the original cost rather than the reproductive cost for the purpose of assessment. The determination of the Public Service Commission is not binding upon the respondents. The latter have been directed by statute to perform a certain duty. Merely adopting the commission’s valuations would be neglect of that duty. It may be as stated in Atchison, Topeka $ Santa Fé Ry. Co. v. Collins (294 P. 742, 749) ‘ ‘ in the long run valuation for rate-making purposes and valuation for taxation purposes should closely approximate each other ” but that is a matter to be settled by the Legislature, not by this court.
The hearings before the Public Service Commission involved many matters pertaining to the operation of the relator’s business which are not at all relevant to the valuation of the subject property. The relator’s entire holdings of real and personal property, the total revenue and the expenses of the whole system were among the many matters considered by the commission. However, that the commission did not intend to and did not interfere with the respondents’ valuations is revealed by the testimony of John Gr. Reynolds, the relator’s assistant controller, and by relator’s Exhibit 10. At page 32 of the transcript of the testimony and in Table 5 of Exhibit 10 it is shown that the total operating taxes for the year 1946 were $3,484,394. The witness Reynolds testified that included in that figure was a sum for real estate taxes. As exhibit 10 reveals, in the years 1947 through 1950 like sums were submitted to the commission. If the commission accepted the real estate taxes, it follows that it recognized the assessment upon which the taxes were based. But whether or not the commission recognized the assessments it did consider the real estate taxes before it established the rates which would bring the relator a fair return on its investment.
*605 In accordance with the above, an order will be signed reducing the assessments as follows: For the year 1946-1947, the total assessment, reduced to the extent requested, will be $2,690,762; for 1947-1948, the assessment will be $2,245,344; for 1948-1949, $2,370,880; for 1949-1950, $2,513,135; for 1950-1951, $2,423,563. Submit order on notice.