**KITTERY ELECTRIC LIGHT CO.**

v.

**ASSESSORS OF the TOWN OF KITTERY and Inhabitants of the Town of Kittery.**

Supreme Judicial Court of Maine.

May 16, 1966.

Pierce, Atwood, Scribner, Allen & Mc-Kusick, by Vincent L. McKusick and Sigrid E. Tompkins, Portland, for plaintiff.

Charles W. Smith, Saco, Francis F. Neal, Kittery, for defendants.

Before WILLIAMSON, C. J., WEBBER, TAPLEY, MARDEN and DUFRESNE, JJ.

RESCRIPT

DUFRESNE, Justice.

Kittery Electric Light Co., plaintiff, appeals from the action of the Justice below denying in part plaintiff's request for abatement of taxes, while the defendant assessors and inhabitants of the town of Kittery cross-appeal because of the partial grant thereof.

The plaintiff's appeal docketed in this court at No. 1452 brings up for review the action of the Superior Court in relation to the 1960 tax assessment. Its 1961 assessment is involved in the companion appeal docketed in this court at No. 1453. 219 A. 2d 744. This second appeal relating to the 1961 tax assessment will be disposed of in a separate opinion.

The plaintiff corporation hereinafter referred to as the Company, on April 1, 1960, was operating in the public utility field and furnishing electricity to customers in the towns of Kittery, Eliot and York, Maine, with 75 per cent of its business in Maine being in the town of Kittery. The plaintiff's property in Kittery, at the assessment date of April 1, 1960, consisted of its distribution and transmission system, encompassing poles, cables, wires, conductors, transformers, loops, meters, 3 substations, certain lands, but no buildings. The company filed timely with the assessors of Kittery its "true and perfect" list of all its estates, not by law exempt from taxation, under R.S. c. 91–A, § 34, now 36 M.R.S.A. § 706. In the list so filed, the company made a detailed showing of an aggregate total

gross book cost of $807,473, deducting therefrom under the legend of accrued depreciation $161,495, and claimed as current market value of its property subject to taxation, the net book cost thereof, or $645,978. The parties stipulated at trial that these figures were correct representations of the company's gross and net book costs. The assessors submitted a tax bill based on a valuation of $368,000 as to all the property of the company excepting land values. They reached that result in the following manner. They first adopted the aggregate gross book cost of $807,473 as submitted by the company. They then subtracted therefrom $7,343 as representing the value of the company land; this appears from the stipulation of the parties. The balance of $800,130 was rounded out to $800,000; this amount in the judgment of the assessors represented the true or fair market value of all the company's property, excepting land. The assessors then applied the ratio of 46% on said amount on the theory that assessments in Kittery of non-residential properties represented 46% of true market value thereof. Hence, the base figure of $368,000 plus land values, was used to compute the company's tax at the rate of $62. per $1,000. The company's petition to the assessors for abatement under R.S.1954, c. 91–A, § 48, now 36 M.R.S.A. § 841, was denied by them, and it appealed to the Superior Court under R.S.1954, c. 91–A, § 51, now 36 M.R.S.A. § 845. After hearing, the Justice below found that the true or fair market value of the company's property including land, was in the amount of $674,118. He applied the ratio of 40% to bring the company's property to the level at which he found residential properties assessed in relation to true value. From this base figure, he computed the tax at $16,718.11 instead of $23,132.20 as assessed by the assessors and granted an abatement for the difference of $6,414.08 by giving judgment in said amount with costs in favor of the company against the defendant municipality since the company had paid the tax. R.S.1954, c. 91–A, § 55, now 36 M.R.S.A. § 849. The presiding

Justice found the true and fair market value of the company's properties by reducing the gross book cost of the company's depreciable property by the sum of $133,355, or 16⅔% of the gross book cost thereof, as accrued depreciation, instead of reducing the same by $161,495 or 20% of the gross book cost.

Both parties have appealed to this Court, and they agree that, so far as the 1960 taxes involved in this appeal are concerned, all formalities required in order to perfect their respective appeal to this court, have been complied with, and all statutory prerequisites on appeal to the Superior Court have also been taken.

The plaintiff contends that it was error in law and fact for the Court below not to accept the company's net book cost as the true and fair market value of its property, and also in refusing to accept the 30% ratio claimed by the plaintiff as being the common average ratio of assessment values of residential properties to true values in the town of Kittery in the year 1960. The defendants on the other hand contend that it was error in law and fact to grant any abatement under the evidence in the case.

To resolve the respective contentions of the parties and determine whether there was competent evidence to support the decision of the Justice below, it is impelling initially to examine the applicable law.

The constitutional mandate reads: "All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed *equally*, according to the *just value* thereof." (Emphasis supplied.) Constitution of Maine, Art. IX, § 8.

The statutory implementation of the constitutional provision is worded as follows: "The assessors shall ascertain *as nearly as may be* the nature, amount and value as of the first day of each April of the real estate and personal property subject to be taxed, and shall estimate and record separately the land value, exclusive of buildings, of each parcel of real estate." (Emphasis again

supplied.) R.S.1954, c. 91–A, § 36, now 36 M.R.S.A. § 708.

Our Court has provided a great number of guidelines in testing the legal adequacy of tax assessments with reference to the constitutional concepts of equal apportionment and just value.

■ The constitutional "just value" standard required by the law of the land has been judicially synonymized with "market value", "true value", "real value", and the problem with this fundamental directive lies not so much with the meaning to be given to the terminology as to its application to the particular facts of varied situations. Sweet Inc. v. City of Auburn, 134 Me. 28, 31, 180 A. 803, 104 A.L.R. 784.

An assessment value which substantially reflects just or market value fully answers the constitutional order, even though it may not be absolutely correct, as perfection is not expected. If the assessors have been "honest with themselves, fair with the public, and true to their oath of office," in their endeavor to reach just values and apportionments to the best of their ability, their judgment thereon controls. But if their opinion and judgment are "so unreasonable in the light of the circumstances that the property is substantially overvalued and an injustice results, or that there is an unjust discrimination, or that the assessment was in some way fraudulent, dishonest or illegal," then relief will be forthcoming. Sears, Roebuck & Company v. Inhabitants of City of Presque Isle et al., 150 Me. 181, 107 A.2d 475.

■ To assess property at its just value is only one of the fundamental requirements of law. The assessment must further represent the owner's equal portion of the burden of taxation, and if the assessors have not appraised at full true value but only at a fixed percentage of true value, then such treatment must be uniform and equal on all real estate and tangible property, so much so that if both cannot be obtained, then equality must prevail. Sears, Roebuck & Company v. Inhabitants of City of Presque Isle et al., supra.

■ Where "it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law." Delaware, Lackawanna and Western R. Co. v. Neeld, 23 N.J. 561, 130 A.2d 6; Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979.

■ The following language of the Kansas court enunciates the preliminary considerations basic to our problem in the instant case:

"Uniformity in taxing implies equality in the burden of taxation, and this equality cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. The duty to assess at full value is not supreme but yields to the duty to avoid discrimination. * * * It makes no difference what basis of valuation is used, that is, what percentage of full value may be adopted, provided it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting thirty per cent, twenty-one per cent or twelve per cent as a basis, so long as either was applied uniformly. Uniformity of taxation does not permit a systematic, arbitrary or intentional valuation of the property of one or a few taxpayers at a substantially higher valuation than that placed on other property within the same taxing district; however, this uniformity and equality in a constitutional and statutory sense does not require mathematical exactitude in the assessment valuation of property for taxtion." Addington v. Board of County Commissioners, 191 Kan. 528, 382 P.2d 315 (1963).

■ Another basic prefatory rule to have in mind pending solution of our problem is the recurring judicial pronouncement that a presumption of validity attaches to

tax assessments and value findings of assessors and that the burden is upon the owner to show overvaluation or illegal apportionment and not on the assessors or municipality to establish the correctness of the appraisal figures. Sweet v. City of Auburn, 134 Me. 28, 32, 33, 180 A. 803, 104 A.L.R. 784; Spear v. Bath, 125 Me. 27, 30, 130 A. 507.

■ A presumption of good faith and conformity to the requirements of the law inheres to the acts of assessors. Cumberland County Power and Light Company v. Inhabitants of the town of Hiram, 125 Me. 138, 140, 131 A. 594.

The plaintiff utility company contends that the Court below erred as a matter of law in holding that the fair market value of the plaintiff's property in Kittery on April 1, 1960, at the 100% ratio was more than its net book cost. The Justice presiding did consider the evidence of net book value in reaching his final conclusion from the evidence. He took account of the fact that all three expert witnesses submitted by the utility company testified that the net book cost of the company's property was its fair market value for purposes of taxation as well as for purposes of rate determination. Not only did he say so, but he did use it with adjustment of the accrued depreciation to reflect the uniform practice applied by the assessors to residential properties when considering the factor of age or obsolescence.

■ Initially, let us say that the net book cost or reasonable value established or approved by the rate regulating agency may in certain cases be equivalent to the true or market value of the identical property for taxation purposes, and it may be as stated in Atchison, T. & S. F. Ry. Co. v. Collins, D.C., 294 F. 742, 749, that "in the long run valuation for rate-making purposes and valuation for taxation purposes should closely approximate each other," yet a blind adherence to or automatic adoption of the public utility commission's valuations by the assessors in the exercise of their functions would undoubtedly be not only neglect of their duties but a flagrant disregard of the constitutional mandate. Brooklyn Union Gas Co. v. Chambers, 7 Misc.2d 601, 164 N.Y.S.2d 768 (1952). But see Washington Water Power Co. v. Kootenai County, 9 Cir., 270 F. 369 (1921).

The value of property for tax purposes and its value for rate-making purposes need not be the same. Public Service Company of New Hampshire v. New Hampton, 101 N.H. 142, 136 A.2d 591, 597 (1957). State ex rel. Public Service Comm. v. Southern Pacific Co., 95 Utah 84, 79 P.2d 25. Bonbright on Valuation of Public Service Corporations, 2d ed., Vol. 1, pp. 56, 515.

As pointed out in Public Service Company of New Hampshire, supra, many different solid reasons may be advanced why net book cost and the just or true value for tax purposes need not be the same.

(1) The duty to ascertain the just value for taxation purposes of the property of public utilities has been placed upon the assessors by law, R.S.1954, c. 91–A, § 36, now 36 M.R.S.A. § 708, and not on the Public Utilities Commission. For them to accept routinely without exercise of their judgment the valuations of the Public Utilities Commission would be an illegal abdication of their powers and duties not called for by any legislative or constitutional directive.

■ (2) The bases of valuation for taxation purposes and for rate-making purposes have been uniformly recognized as different. Northwest Light & Water Co. v. Alexander, 29 Idaho 557, 160 P. 1106 (1916). And under our peculiar statute regulating the Public Utilities Commission in 1960, R.S.1954, c. 44, § 18, as amended by P.L. 1957, c. 400, § 2, now 35 M.R.S.A. § 52, current value must be excluded in determining reasonable value for rate making. "In determining reasonable and just rates, tolls and charges, the commission shall fix a reasonable value upon all the property of

any public utility used or required to be used in its service to the public within the State and a fair return thereon. In fixing such *reasonable value,* the commission shall give due consideration to evidence of the cost of the property when first devoted to public use, prudent acquisition cost to the utility, less depreciation on each, and any other factors or evidence material and relevant thereto, *but such other factors shall not include current value."* (Emphasis supplied.)

In Central Maine Power Co. v. P. U. C. et al., 156 Me. 295, at page 316, 163 A.2d 762, at page 774 (1960), our Court has said that "neither cost of the property when first devoted to public use nor prudent acquisition cost is made synonymous with reasonable value by the statute. Nor is either of those 2 costs forced upon the P. U. C. as a substitute for reasonable value. Reasonable value as the objective of the Legislative act is not susceptive of such simple attainment. * * * These legislative determinants were not directed in lieu of but as conducive with the exercise of a sound discretion." A fortiori, the valuations of the Public Utilities Commission determining the reasonable value of the property of a public utility, where reached without consideration of the current value thereof under legislative fiat, are not to be used by the assessors as synonyms or substitutes for just value under the constitution, but the assessors must exercise their sound judgment in consideration of such valuations.

(3) It would be inequitable to hold the assessors rigidly to the formula of net book cost for tax purposes. As exemplified in Public Service Company of New Hampshire, supra, such inequities "can well be illustrated by assuming two approximately equivalent plants in the same town, the first built in an era of high costs, such as the present, and the second built in a low-cost era such as we encountered in the '30's and may well experience in the future. Applying the net book cost theory in the event of construction during depressed prices, the town would be entitled to a higher tax value on the older plant than on the newer one, though the latter was performing the same function, was equally well constructed, and contained newer and less worn equipment."

(4) The taxation basis of just value does not give the assessors that degree of freedom of adjustment among taxable properties which the reasonable value basis for rate making purposes permits the Public Utilities Commission. Any tax increase can readily be compensated for by a rate increase as property taxes are proper operating expenses, while the effect of tax abatements may not be so easily adjusted among the several taxpayers.

The plaintiff contends, and its expert witnesses support such contention, that it is unrealistic to say that the fair market value of public utility property can be more than the net book cost, because the company's net earning power as regulated by the commission is based upon this figure. It claims that no one would pay more for the property than the amount on which he would be able to earn a return, and any purchaser would have in mind that the purchase of the property at a higher price than the net book cost would not be compensated for in a future rate increase request, as the price paid in excess of net book cost would not be allowed in establishing the rate base of the utility to the new purchaser, because it would not be a prudent acquisition cost. The argument is forceful, but upon analysis is not persuasive nor compelling.

We must admit that the task of determining the fair market value of the property of a public utility such as the instant electric company is not as simple as the appraisal of an ordinary dwelling house, store or other business establishment. In most part, it consists of a network of wires and cables, suspended to poles, and connected to conductors, transformers, meters and other paraphernalia used in the business of transmitting and distributing electric energy. The bulk of this property would have no practical usefulness except as an integrated

part of the system, and its value upon discontinuance of the system would be insignificant. This property is adapted to a single use and its value depends entirely upon a continuance of that use. An appraisal of its value without consideration of the use to which it is adapted would be a practical impossibility as its use is the only element that gives it whatever real value it has.

■ The market value of single purpose property must be determined by consideration of all factors calculated to influence an assumed buyer and seller in reaching a fair price in a free market. Public Service Company of New Hampshire, supra. Assessors of Quincy v. Boston Consolidated Gas Co., 309 Mass. 60, 34 N.E.2d 623.

■ It is true that the necessary and useful property of a public utility cannot be sold except with prior approval of the Public Utilities Commission. R.S.1954, c. 44, § 47, now 35 M.R.S.A. § 211. Whether a sale above the net book cost would receive Commission approval would depend upon the fair market or true value of the assets as distinguished from the valuation for rate making purposes. The Commission would have to use sound discretion therein and could not arbitrarily disregard evidence of true value. Unreasonable Commission action would be subject to judicial review, and as stated in Central Maine Power Co. v. P. U. C. et al., 156 Me. 295, 322, 163 A.2d 762, the Commission cannot dispense with evidence of the prudency of the acquisition cost paid. And if the purchase price is not sheer speculation, but is supported by evidence that shows it to be "realistic, bona fide, legitimate and within rational and sensible limitations," Commission approval could not be lawfully refused. At least, the assumed buyer and seller on the free market would be justified in considering the same to be within the realm of probabilities. See Public Service Company of New Hampshire, supra at page 597 of 136 A.2d. The regulation of rates by the Public Utilities Commission puts a ceiling on the earning capacity of public service corporations, and

realistically dampens speculative visions of unreasonable profits and returns. Simultaneously it stabilizes to a considerable degree their corporate values in a free market. But it does not effect a complete freeze. The reasonably foreseeable prospects of commission approval of sale or rate increases are considerations affecting the market value of property of public utilities. "Whatever factors are based upon a reasonable probability existing at the time of the assessment, as opposed to pure speculation, are relevant on the question of value." McKnight Shopping Center, Inc., v. Board of Property Assessment, A. & R., 417 Pa. 234, 209 A.2d 389 at 393.

■ As stated in Sweet Inc. v. City of Auburn, 134 Me. 28 at page 32, 180 A. 803, at page 804, 104 A.L.R. 784:

"If, * * * [because of single purpose public utility property] it is impossible to determine the true worth of real estate by reference to the price which such property will bring in the market, resort may be had to other factors. Consideration may be given to the original cost of construction less depreciation, although perhaps this is less important than other things, to reproduction cost with an allowance for depreciation, to the purchase price, if not sold under stress or unusual conditions, *to its capacity to earn money for its owner. No one of these elements is controlling, but each has its place in estimating value for purposes of taxation.*" [Emphasis supplied.]

■ The plaintiff has cited no authority subscribing to any such doctrine that valuations of regulatory agencies are binding and conclusive upon the assessors in their assessment of taxes upon property of public utilities. The authorities are to the contrary. Public Service Company of New Hampshire v. New Hampton, 101 N.H. 142, 136 A.2d 591 (1957); Northwest Light & Water Co., v. Alexander, 29 Idaho 557, 160 P. 1106 (1916); Brooklyn Union Gas Co. v. Chambers, 7 Misc.2d 601, 164 N.Y.S.2d 768 (1952); Wisconsin Gas & Electric Co.

v. Wisconsin Tax Commission, 221 Wis. 487, 266 N.W. 186, 195, 268 N.W. 121 (1936); State Tax Commission v. Consumer's Heating Company, 207 Or. 93, 294 P.2d 887, 900, (1955).

The plaintiff charges error against the presiding Justice in his finding that the full true or market value of its property was $666,775 instead as claimed by the Company in the amount of $638,635. This result was achieved by allowing against gross book cost as accrued depreciation the sum of $133,355 [16⅔% of the company's depreciable property, to wit, 16⅔% of $807,473— $7,343] instead of the sum of $161,495, the company's claimed accrued depreciation— 20% of the gross book cost. These company figures of accrued depreciation were admitted to be estimates only since the company books do not reflect any allocation of the general reserve to the company's specific property in the three respective towns in which the company's property is located. Indeed the company allocated as accrued depreciation of its property in Kittery that percentage which the total reserve for depreciation of all its property in the three towns in Maine bore to the total property of the Company therein. In respect thereto, the presiding Justice further stated "Equipment may be completely written off the books of a company as fully depreciated, or may be very near the end of its expected life—yet according to an expert's opinion may be rendering completely satisfactory service in the production and distribution of electricity and may continue to do so for some future years."

There is no indication by the presiding Justice as to the particular ground upon which he allowed depreciation at the rate of 16⅔% of gross book cost instead of 20% thereof as claimed by the Company. Was it on account of his belief that some of the property survives its stated economic life as testified to by one expert? Or was it because the assessors' formula with reference to residential properties debased by 16⅔% its value quotient when said

properties were over 20 years of age? It matters not on which basis the trier of the facts resolved this item of depreciation. His decision has support in the evidence.

The presiding Justice was not required to believe the testimony of any particular witness, expert or otherwise, but could accept such portions thereof as appeared to him to have the more convincing weight. Depreciation, like the market value of property could not be proved with mathematical certainty and must ultimately rest in the realm of opinion, estimate and judgment. "The amount of the annual allowance for depreciation is the 'subject of estimate and computation'. * * * There seems to be no hard and fast rule, however, as to the method by which annual depreciation should be computed." City of Waterville v. Kennebec Water District et al., 138 Me. 307, at 324, 25 A.2d 475, at 481. In forming his own independent judgment from the whole evidence relating to depreciation, it was not error for the presiding Justice to agree only in part with the plaintiff's experts. See Assessors of Quincy v. Boston Consolidated Gas Co., 309 Mass. 60, 34 N.E.2d 623 at page 630.

The defendants however claim error on the grounds that the presiding Justice should have accepted the gross book cost as the just, true or market value of the plaintiff's property in Kittery, as the assessors had done. Two assessors testified that the gross book cost was nearer to the value than net book cost. No more specificity was available in that respect. Their good faith is unquestioned. There was sufficient evidence in the record to deflate the testimony of the assessors. The assessors' rejection of the company's accrued depreciation in toto without any other evidentiary support of their action than their unexplained mental conclusion that the gross book cost was nearer to just value than the net book cost, smacks of arbitrary guesswork which the presiding Justice below as the trier of the facts had no duty to perpetuate. He did find a substantial over-

valuation resulting in an indisputable injustice to the plaintiff and his adjustment of the accrued depreciation to reflect the just value of the plaintiff's property was justified.

As stated by this court in Cumberland County Power and Light Company v. Inhabitants of the Town of Hiram, 125 Me. 138 at 140, 131 A. 594 at 595. "Its [petitioner's] property was overrated, but this wrong was righted in the court below, and it was there assessed according to the true just value of its property as required by the Constitution."

The plaintiff further claims that the tax assessment against its property was invalid because of invidious discrimination, in that it was taxed on the ratio of 46.2% of true value, while the residential property in general was taxed on the ratio of 40% of true value according to the assessors themselves, but on the ratio of 30% only according to the plaintiff. The stated grievance lies in that the Justice below did not reduce the plaintiff's assessable base to the level of 30% of true value, but only to the level of 40% of true value.

Our Court did say in Sears, Roebuck & Co. v. Inhabitants of City Presque Isle et al., 150 Me. 181 at page 190, 107 A.2d 475 at page 480: "The law requires that when a percentage of the true value is taken for taxation purposes, the percentage be uniform and equal on all real estate and tangible property."

In Shawmut Manufacturing Company v. Town of Benton, 123 Me. 121, 129, 122 A. 49, 52, our court approved as settled law the following rule: "Whenever it can be established indisputably by competent and sufficient evidence that a given assessment upon an aggrieved tax payer's property has been laid upon a distinctly higher valuation than the assessments * * * upon the property of the taxpayers in general, and that this discrimination was intentional. * * * the courts will intervene to reduce or annul the tax to the ex·

tent necessary to place the complaining taxpayer upon a plane of equality with others in his class."

The Court found no premeditated transgression in the facts in Shawmut Manufacturing Company, supra. The proof was inadequate: one witness was said to be too general and indefinite and without convincing weight; the other, even if his evidence were accepted, did not show any difference or distinction between the assessment of the appellant's property and that of the other taxpayers in general.

Again, in Cumberland County Power and Light Company v. Inhabitants of Hiram, 125 Me. 138 at page 141, 131 A. 594 at page 595, our Court indicates that to have a valid claim of invidious discrimination in tax assessments, the discrimination must be supported by "something which in effect amounts to an intentional violation of the essential principle of practical uniformity." The Court there said that "there was no intentional and systematic undervaluation of other properties while the petitioner paid on full just value."

Again, in Sweet Inc. v. City of Auburn, 134 Me. 28, at page 33, 180 A. 803, at page 805, 104 A.L.R. 784: "Uniformity can only be approximated. The court is not a board of review to correct errors. It is solely where there is evident a systematic purpose on the part of a taxing board to cast a disproportionate share of the public burden on one taxpayer, or one class of taxpayers, that the court will intervene." [Emphasis supplied.]

In Sears, Roebuck & Co. v. Inhabitants of City of Presque Isle et al., 150 Me. 181, 107 A.2d 475, proof fell short of showing the necessary factual purposeful systematic discrimination. Opinions of trends or changes in values and the purchasing power of the dollar by a political economist, and testimonial assertions by a local real estate expert that farm and urban real estate were valued at substantially less than 80% of fair value at which the stock of the peti-

tioner had been appraised, were found too uncertain in exact figures as to any particular property to qualify as sufficient proof.

■ The conscious, purposeful and systematic discrimination rule advanced by our Court as the basis for relief against taxation imbalance in violation of the constitutional mandate of equality, does not necessarily require proof of actual fraud. People ex rel. Ross v. Chicago, M., St. P. & P. R. Co., 381 Ill. 58, 44 N.E.2d 566 (1942).

■ As stated in Cumberland County Power and Light Company v. Inhabitants of Hiram, supra, there must be something which *in effect* amounts to an intentional violation of law resulting in discrimination; some courts have called this something, constructive fraud.

"There must be a conscious failure to exercise a fair and impartial judgment, or a resort to arbitrary methods, different from those employed in assessing other property of like character and situation; thereby resulting in designedly imposing an unequal burden on the property of the complainant, before an assessment will be invalidated". * * * "Before the decision of the Board (of Equalization) * * * will be set aside by the courts on review, even though there be error or mistake, there must be proof of actual fraud, or such arbitrary, unreasonable or grossly oppressive action, which willfully transgresses or disregards the law, and amounts to constructive fraud". * * * "It is only when the conclusions of assessing officers, as to the value of property for purposes of taxation, are not honestly arrived at, or are made in pursuance of some fixed rule or general system, the result of which is necessarily discriminatory and inequitable, that the courts will interfere". * * * Eastern-Columbia, Inc. v. Los Angeles County et al., 61 Cal. App.2d 734, 143 P.2d 992, 997, 998 (1943).

In Mahoney v. City of San Diego, 198 Cal. 388, 245 P. 189 (1926): "(n)or will his [the assessor's] assertion, even though it be admitted to be true, that he acted honestly and in good faith in making the assessment in question, suffice to compel the upholding of an assessment when the assessor making it, however honest and well-intended, has wilfully adopted and deliberately pursued a plan of assessment which is violative of the fundamental principles which should be his guide in the performance of his official duty." * * * See also, L. W. Blinn Lumber Co. v. Los Angeles County, 216 Cal. 474, 14 P.2d 512, 84 A.L.R. 1304; Great Northern Ry. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532.

■ But, in order to obtain relief, under the constructive fraud doctrine, the aggrieved taxpayer must show more than some specific instances here and there of a lower valuation in proportion to just market value being placed on taxable property than was given to plaintiff's property. It must be made to appear that a greater valuation in proportion to the just market value was placed on the complaining party's property than was put on the *general mass* of taxable property. First Nat. Bank of Nephi v. Christensen, 39 Utah 568, 118 P. 778 (1911).

■ Sporadic differences in valuations do not spell invidious discrimination, intentional or constructive, as mere errors of judgment on the part of the assessors in and of themselves do not give ground for relief. In re Charleston Federal Savings & Loan Ass'n, 126 W.Va. 506, 30 S.E.2d 513 (1944). Gaston v. Townsend et al., 150 Me. 292, 110 A.2d 593.

■ As stated in Jat Company, Inc. v. Division of Tax Appeals, 47 N.J.Super. 571, 136 A.2d 666, at page 672:
"It must, furthermore, be kept in mind that a showing of spot disparity in apparent assessment valuation rates, limited to isolated or relatively small area pockets, is far from establishing such discrimination as would justify a tax board or court * * * in reducing the parcel assessed commensurate-

ly higher. So soft a concept would soon lead to administrative chaos in the attainment of practical assessment uniformity and would tend to frustrate the long-range aim of reasonably consistent adherence by assessors to whatever the legal valuation standard of assessment may be ordained to be as of any particular time."

Our Court has said in Penobscot Chemical Fibre Company v. Inhabitants of the Town of Bradley, 99 Me. 263 at pages 266, 267, 59 A. 83, at page 85:

"It [the evidence of valuations on three or four pieces of property only] furnishes no sufficient basis by which we may judge whether the assessors designedly undervalued the property in the town *generally* or not." (Emphasis supplied.]

■ We do agree that a taxpayer may seek successfully a reduction of assessment below just, true or market value upon clear and substantial proof that his share of the total tax burden substantially exceeds the share allocated to other taxpayers generally, and that such relief from unequal tax treatment will be granted upon sufficient substantial proof indicating that notwithstanding assessor disclaimer, there did exist in fact an intentional and systematic undervaluation of other properties generally while the complainant was assessed at a higher level.

Such relief has been granted generally. See, In re Appeals of Kents, 2124 Atlantic Ave., Inc., 34 N.J. 21, 166 A.2d 763 (1961); Siegal v. City of Newark, 38 N.J. 57, 183 A.2d 21, (1962); The Deitch Company v. Board of Property Ass., App. & Rev., 417 Pa. 213, 209 A.2d 397 (1965); McKnight Shopping Center, Inc. v. Board of Property Assessment, A. & R., 417 Pa. 234, 209 A.2d 389, (1965); Sears, Roebuck & Company v. State Tax Commission, 214 Md. 550, 136 A.2d 567 (1957); Shoppers' World, Inc. v. Board of Assessors of Framingham, 348 Mass. 366, 203 N.E.2d 811 at page 820, (1965).

■ Perfect relief should not be anticipated on appeal, any more than perfect true value may be reached on the original assessment. Practical justice should however be attained. Should the aggrieved taxpayer's assessment be reduced to a proven average percentage ratio of true value about which the bulk of the assessments in the taxing district generally tend to cluster? Or, should it be reduced to that predetermined ratio of true value as the assessors consciously sought to employ as a fixed ratio of true value throughout the taxing district? Or, should it be reduced to the factual average ratio of true value for all property in the taxing district? The applicable rule need not be stated at this time, since the plaintiff has failed to prove that it is entitled to more relief than it received at the hands of the court below. Our ultimate decision to the effect that the plaintiff has failed in its attempt to have its assessment reduced to 30% of true value, is not based on the fact that its offer of proof was limited to an analysis of ten percent only approximately of the taxables in the district, but rather on the fact that the proffered evidence of its expert violated recognized evidentiary principles and was properly excluded.

■ Evidence of an overall prevailing ratio within a taxing district as to all assessed properties therein or as to any part thereof, may be introduced, received and considered relevant and competent for the purposes for which it is presented, provided that the manner in which such evidence is introduced permits of cross-examination. Pittsburg Miracle Mile Town & Country Shopping Center, Inc. v. Board of Assessment, A. & R., 417 Pa. 243, 209 A.2d 394 (1965).

■ "An expert witness may not give an opinion based in part on the opinions of others. The opinion, if not based upon his own firsthand observation, should at least be grounded upon facts supplied by others for which there is support in the evidence. Unless the factual foundation which under-

lies the opinion is known and subject to the test of cross-examination, it is virtually impossible to conduct intelligent and effective cross-examination as to the opinion itself." Brouillette v. Weymouth Shoe Co. et al., 157 Me. 143, 145, 170 A.2d 412, 413. See also, Whiting, Appellant, 110 Me. 232, 85 A. 791.

The excluded evidence to support plaintiff's offer of proof on this aspect of the case was taken and reported in full in accordance with M.R.C.P. 43(c), and consisted entirely of the testimony of Jerome Knowles, Jr., a real estate appraiser whose expertise in that field was admitted. He testified that the appraisal of fair market values in the town of Kittery was made by himself and others under his supervision. He explained that they sampled approximately ten percent of the parcels in Kittery [approximately 300 parcels] which represented about fourteen percent of the total assessed valuation. By personal examination of the sample properties made by himself and his employees or associates and undoubtedly from numerous reports made after said inspections, sufficient data was obtained to apply the reproduction-cost-less-depreciation formula in order to get true value for the year in question. Information was gathered from others as to the age of the respective properties, as well as to the sales prices of some 60 to 70 sales sampled. Data was secured from others in determining economic losses in various areas in the Town. Improvements to property were discussed with the owners of properties. Mr. Knowles testified that in his opinion, the 300 parcels that they appraised were *fairly representative* of a cross-section of the non-utility properties in Kittery, and that they tried to make their samplings as *thorough* as they could over the entire town and to be *as fair* as they could in the choices of properties for that purpose. His ultimate conclusion [excluded from evidence by the Justice below] was that the actual assessment ratio to market value on non-utility real estate in Kittery was approximately 30 per cent.

Out of the 300 parcels sampled for appraisal study by Mr. Knowles and his associates, not a single one was described and analysed in the proffered evidence, nor was any one parcel of the other 90% of assessed properties in Kittery. The comparisons necessary to permit selection of so-called sample representative properties were all made outside of court, and were not part of the tendered evidence. The only evidence for the trier of fact to evaluate was the bare conclusion of the expert. The facts upon which his opinion was based remained at all times in the realm of generalities and never rose to the level of evidentiary specifics from which the trier of the facts could test the accuracy of the basic comparisons and thus the ultimate worth of the expert opinion. If such method of proof were available to upset bona fide tax assessments, then town and city treasuries would be at the mercy of the expert real estate appraiser, who thus on the bare assertion of his opinion could syphon away a good portion of the budgeted operating revenues, with chaotic results to our municipal governments.

■ The conclusion of the plaintiff's expert was properly excluded for the following reasons: it is largely grounded on hearsay reports made to the witness by various people working for him; their selection of the sample properties, either in elimination or inclusion, is not buttressed by any evidence whatsoever, except their self serving stated standard that they tried to be as thorough and as fair as they could be in the choices of property. Thus, a distorted picture of the situation could be presented without any possible way for the trier of facts to discover the distortion and assess its degree.

■ The presiding Justice stated in his memorandum of decision that "although the testimony of this expert in relation to his opinion of the ratio applied by the assessors was objected to and excluded, it is part of the record as an offer of proof, and I have given it consideration." To exclude the evi-

dence was proper for the reasons previously stated. To give such excluded evidence consideration was error, but the error was harmless. The defendant assessors and municipality cannot complain, since they prevailed on this issue.

 The plaintiff is not aggrieved; even though it did not prevail on this issue, it succeeded in having the court below consider the excluded evidence as if it had been admitted. Assuming then that the plaintiff's excluded expert evidence was admissible, we still would have to decide that the plaintiff was not harmed, since such evidence of expert witnesses is not conclusive or decisive. Gaston v. Townsend et al., 150 Me. 292, 110 A.2d 593. It may be disbelieved in part or in whole. See, Cupples Hesse Corporation v. State Tax Commission, 329 S.W.2d 696 (Mo.1959). Its weight is solely for the trier of the facts, who "may fairly come to the conclusion that none of it, or a part only, is entitled to weight." Johnson v. Bangor Railway and Electric Company, 125 Me. 88, 131 A. 1. See also, Sanborn v. Elmore Milling Co., Inc., 152 Me. 355, 359, 129 A.2d 556. This is especially so where market values of property are involved, as there are so many elements, so many contingencies, so many uncontrolled factors, entering into the market value of real estate, that opinions of experts are not usually in agreement. "This very fact, the constant disagreement as to market value, shows how unfair it would be to bind anyone by the opinion of any such witness." Ray, to Use of Miller v. City of Philadelphia, 344 Pa. 439, 25 A.2d 145, at 147.

 The plaintiff urges that the presiding Justice below erroneously gave unjustified weight to the judgment of the assessors. In effect, it argues that since it had the burden of proof in showing either overvaluation or illegal apportionment of the tax burden in comparison with other taxable property, it was error for the Justice below to increase that burden by requiring that in addition it "overcome" a presumption of validity of the assessment. True, the court below said: "The burden is on the plaintiff to show that the property of others was generally assessed at less than its fair market value. The presumption is that the assessments are valid until overcome by convincing evidence to the contrary." In Hinds v. John Hancock Ins. Co., 155 Me. 349, 155 A.2d 721, 85 A.L.R.2d 703, we established the use to be made of rebuttable presumptions. They are not "evidence" in the scales with weight to be "overcome". Rebuttable presumptions are rather merely procedural devices in the trial of a case, which have the effect of shifting to the other party, not the burden of proof, but the burden of going forward with evidence. As said in Hinds, supra, the "disputable presumption persists until the contrary evidence persuades the factfinder that the balance of probabilities is in equilibrium, or, stated otherwise, until the evidence satisfies the jury or factfinder that it is as probable that the presumed fact does not exist as that it does exist." When that balance of probabilities in the evidence is reached, then the sole procedural function of a rebuttable presumption has been fully attained, and it vanishes. A party however has no need of the aid of a rebuttable presumption in order to shift the burden of going forward with evidence to an opponent who *already* has been charged from the outset with the burden of proof or persuasion with respect to a particular issue. As was stated in 20 Am.Jur.Evidence, § 157: "During the trial of an action, the party *who has the burden of proof upon an issue* may be aided in establishing his claim or defense by the operation of a presumption, * * * a presumption may operate to relieve a party of the duty of presenting evidence until his adversary has introduced proof to rebut the presumption." [Emphasis supplied]. In the instant case, the plaintiff taxpayer had the burden of proof from the beginning; this necessarily included the subsidiary burden of going forward with evidence. There was no occasion for the Justice below to advert to

the presumption of validity attaching to the acts of public officials since that presumption could do no more than cast upon the plaintiff taxpayer a burden which it had already assumed. When we examine the treatment accorded the evidence by the Justice below, however, it becomes apparent that he did not artificially enlarge the burden of proof which the plaintiff was required to carry. The standard imposed was that the plaintiff show by the fair preponderance of the evidence either (1) that its property was assessed at more than the just value thereof, or (2) that its property was assessed at a higher percentage of its just value than was the general mass of other taxable property. That the burden imposed upon the plaintiff taxpayer was not in excess of the legal standard is best evidenced by the fact that abatement of plaintiff's tax was ordered to the extent warranted by the evidence. That plaintiff was unable to have the assessment reduced to the level of 30% of the just value of its property stems not from the imposition of an erroneously high evidentiary requirement but rather from the unpersuasiveness of plaintiff's supporting evidence which evidence as stated previously was properly excluded even though erroneously considered.

In conclusion, let us say that the plaintiff's appeal did not vacate the assessment. Penobscot Chemical Fibre Company v. Inhabitants of the Town of Bradley, 99 Me. 263 at 271, 59 A. 83. The taxpayer had the burden of proof. It had the burden of persuading the court of the merits of its contentions on appeal. Shawmut Manufacturing Company v. Town of Benton, 123 Me. 121, 122 A. 49; Spear v. Bath, 125 Me. 27, 30, 130 A. 507; Sears, Roebuck & Co. v. Inhabitants of City of Presque Isle, et al., 150 Me. 181, 186, 107 A.2d 475.

The entry will be

Plaintiff's appeal denied.

Defendants' cross appeal denied.

RUDMAN, J., did not sit: