**TOWN OF THOMASTON**

v.

**BUREAU OF TAXATION.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1985.

Decided April 1, 1985.

Linnell, Choate & Webber, Curtis Webber (orally), Auburn, for plaintiff.

Polly H. Frawley (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

The central issue in this case is whether it is permissible for the Bureau of Taxation (the "Bureau") to base a town's 1984 state valuation on the value of property in that town as of April 1, 1982. The Town of Thomaston claims a substantial reduction in its tax base in 1983 and appeals from the judgment of the Superior Court (Kennebec County) upholding the Bureau's use of 1982 values in connection with the 1984 assessment. We find no error and we deny the appeal.

### I.

Under 36 M.R.S.A. § 208 (1978), the Bureau has the duty to equalize state and county taxes among the several towns and the unorganized territory. The Bureau is directed to "equalize and adjust the assessment list of each town, by adding to or deducting from it such amount as will make it equal to its just value as of April 1." The Bureau prepares a proposed state valuation of real and personal property for each town, and then provides notice of this proposed valuation to each town. A town can seek review of a proposed state valuation before the Municipal Valuation Appeals Board (the "Board"). The Bureau has the burden to show that its determination is "reasonable and the municipality's claims are unreasonable." See 36 M.R.S.A. § 292 (1978 and Supp.1984–1985).

Additionally, the Bureau is required to certify to the Secretary of State before February 1 "in the year of the regular session of the Legislature the equalized just value of all real and personal property in each municipality. ... Such equalized just value shall be uniformly assessed in each municipality ... and shall be based on 100% of the current market value." 36 M.R.S.A. § 305(1) (1978). The certified figure is used to set the amount of state funding for educational and other grants to

the towns, as well as to determine the apportioned amount of county tax that a town owes. *See* 20–A M.R.S.A. § 15511(1)(A) (1983) (school finance); 22 M.R.S.A. § 4311 (Supp.1984–1985) (welfare reimbursement); 30 M.R.S.A. § 254 (Supp. 1984–1985) (county tax). In general, a higher state valuation results in a town receiving a lesser amount of state funds and being subjected to higher county taxes.

The starting point for the state valuation in any year begins with property valuations determined by local assessors. The assessors are required to submit to the State Tax Assessor their assessments and a statement of the percent of current market value on which the assessments are based. 36 M.R.S.A. § 383 (1978). The local assessment is based on April 1st data in that particular year. 36 M.R.S.A. § 502 (Supp. 1984–1985). After determining the equalized state valuation from the locally assessed values, the State Tax Assessor is required to notify each town of its state valuation by September 1, of the year preceding the year in which the valuation will be operative. *See* 36 M.R.S.A. § 208 (1978). Thereafter municipalities are given the opportunity to contest the valuation before the Board and decisions are required to be rendered before January 15. 36 M.R.S.A. § 292 (Supp.1984–1985). The State Tax Assessor is then required to certify the final valuation to the Secretary of State prior to February 1. 36 M.R.S.A. § 305 (1978). The final valuation controls the apportionment of grants and county taxes for the next fiscal year beginning July 1 and running through June 30 of the following calendar year. 5 M.R.S.A. § 1501 (1979).

In an effort to accommodate the time constraints and allow an opportunity for the Bureau to perform the work necessary to arrive at an equalized assessment based on the most current information available on a statewide basis, the so called "two year rule" is applied. The rule promulgated by the Department of Finance and Administration provides that "[t]he state valuation filed with the Secretary of State prior to February 1st of each year will be based upon the municipal valuation as of April 1st, two years prior." Me. Dept. of Finance and Administration Reg. 08–125–Chapter 201.01 (February 1, 1982). Accordingly, in the case before us, April 1, 1982 data was used to determine a state valuation reported to the towns in September of 1983. The resulting valuation was to be reported to the Secretary of State prior to February 1, 1984 and would control the apportionment of grants and taxes from July 1, 1984 through June 30, 1985.

The Town of Thomaston appealed its 1984 state valuation to the Board arguing that a 10.8 million dollar tax abatement granted to the new owners of a cement plant on April 1, 1983, should have been reflected in the 1984 valuation. The Board affirmed the state valuation and the Superior Court affirmed on review. The Town now appeals to this Court.

II.

■ The Town of Thomaston argues at the outset that the "two year rule" was not legally adopted because of deficiencies in the notices given before and after its promulgation. The Administrative Procedure Act requires a notice of hearing on the proposed rule (5 M.R.S.A. § 8053(3)(D) (Supp.1984)), a basis statement at the time the rule was adopted (5 M.R.S.A. § 8052(5) (Supp.1984–1985)), and a post-adoption notice (5 M.R.S.A. § 8056(1)(D) (Supp.1984–1985)). The Town charges that the notices failed to set forth the substance of the rule and the basis for the rule. We agree that the notices are deficient. Although the subject matter of the rule is adequately described, a description of the substance of the rule and its basis is totally lacking. In the context of this case, however, such a defect does not require a different result. The rule purports to be only an interpretation of the statute. If it is a reasonable construction of the law, no error will arise from an application of that construction.

The issue remains one of divining legislative intent.

■ The Town next argues that the "two year rule" is inconsistent with the governing statute and therefore it is ineffective. The Town contends that the statutory reference to "current market value" (36 M.R.S.A. § 305(1)) and "just value as of April 1st" (36 M.R.S.A. § 208) negates any interpretation consistent with the application of a "two year rule." Taken to the extreme, the Town's argument would, for example, require that the Bureau collect the municipal data and anticipate the April 1, 1984 values and report those values to the Town by September 1, 1983 and report the final valuation to the Secretary of State by February 1, 1984. The Bureau contends that unless the "two year rule" is applied there would be insufficient time to test and adjust the figures submitted by the towns. Thus, the Bureau construes "current market value" as referring to the most current figures, computed as of April 1, available on a state-wide basis. The main purpose of the statutory scheme is uniformity and equality in state valuation. Considering the purpose of the statute and the administrative impossibility of adhering to the statutory time limits if data from the current year is to be used, we readily accept the conclusion that the interpretation will attain the statutory goals of uniformity and equality. We have previously recognized that where conflict arises between true value and uniformity and equality, the latter two are the preferred purposes of the law. *See Kittery Electric Light Co. v. Assessors of the Town of Kittery*, 219 A.2d 728, 734 (Me.1966). The "two year rule" represents a reasonable response to the administrative difficulties presented by the statute and the Town has failed to demonstrate any inconsistency with the statute. Although the Bureau's interpretation may result in a delayed recognition of a decrease in valuation, the same delay would be involved in the recognition of an increase. As interpreted, the statute appropriately serves the goals of uniformity and equality. The Bureau is charged with the responsibility for administering the statutory scheme for state valuation, accordingly its interpretation of the statute is entitled to great deference. *Kelley v. Halperin*, 390 A.2d 1078, 1080 (Me.1978).

We conclude that the Board committed no error in rejecting the data offered from the year 1983 and affirming the valuation based on data collected as of April 1, 1982.[1]

The entry must be:

Judgment of the Superior Court affirmed.

All concurring.

---

**1.** The rules of the Board state that "the time span utilized in data provided by a municipality appealing the valuation proposed by the Assessor to the Board shall cover the same period utilized by the Bureau in arriving at the State Valuation for that particular year." Me. Municipal Valuation Appeals Board Reg. 94–378–Chapter 1.02(B)(3)(a) (October 19, 1979).