# Town of Barnet v. New England Power Company

[296 A.2d 228]

No. 95-71

Present: Shangraw, C.J., Barney, Smith and Daley, JJ.

Opinion Filed October 3, 1972

*Arthur L. Graves, Esq.,* St. Johnsbury, and *Bing & Reed,* Essex Junction, for Plaintiff.

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Defendant.

**Shangraw, C.J.** This appeal is brought by the Town of Barnet so this Court may review the decision of a State Board of Tax Appraisers, appointed by the Tax Commissioner, in which they placed a valuation upon New England Power Company's property in Barnet.

New England Power Company owns real estate and improvements thereon in the Town of Barnet consisting of the Vermont portions of two dams across the Connecticut River, 854.92 acres of land, flowage rights, and generation and transmission facilities used in connection with its electric generating operations. With the exception of two lots of land, containing approximately 125 acres, all of the property of New England Power Company located in the Town of Barnet is part of Federal Power Commission Project No. 2077. See 11 FPC 751, 14 FPC 501, and 14 FPC 504.

New England Power Company's property in Barnet was appraised for taxation in 1968 by the listers of the Town of Barnet for $3,343,852. In 1969, the Town of Barnet undertook a reappraisal of all the real estate located within the Town. As a result, the property of New England Power Company was appraised at $5,015,778. See 32 V.S.A. §§ 3431, 3481, 4041, 4044. An appeal from this valuation was taken to the Board of Civil Authority of Barnet, which, after a hearing, denied New England Power Company's appeal. See 32 V.S.A. §§ 4404, 4408, 4409. Further appeal was taken to the Commissioner of Taxes who referred the matter to a board of three appraisers. See 32 V.S.A. §§ 4461, 4465.

The State Board of Tax Appraisers conducted hearings, and in its report of findings to the Commissioner of Taxes reduced New England Power Company's 1969 appraisal to $3,443,652. This valuation is substantially the net book value of the prop-

erty as it is carried upon the books of the New England Power Company.

The Town of Barnet, in this appeal, challenges the findings made by the State Board of Tax Appraisers in its report as well as the exclusion of certain exhibits the Town of Barnet sought to introduce into evidence at the hearings held before the Board. More specifically the Town of Barnet challenges that portion of the findings which state as follows:

> "The property of New England Power Company within the Town of Barnet, being special purpose property suitable for the generation of electrical power and energy only, and being subject to the foregoing restrictions as to sale and rate base, has no greater fair market value than its net book value at any given time."

Thus, it is the Town of Barnet's contention that the State Board of Tax Appraisers was in error when it declared as a matter of law the restrictions and conditions imposed by the Federal Power Act and the Federal Power Commission upon the property of New England Power Company restrict the fair market value of this property so it may not have a fair market value greater than its net book value at any given time. The Town of Barnet further contends the Federal Power Act in no sense limits the market value of the property owned by New England Power Company which is subject to the provisions of that act.

On the other hand it is New England Power Company's position that based upon the restrictions and conditions placed upon the property by the Federal Power Act and by the Federal Power Commission the Board was justified in finding as a matter of judgment the fair market value of the property did not exceed the net book value.

■■ At the outset it must be stated the Board of Tax Appraisers appointed by the Tax Commissioner is a quasi-judicial agency acting as a trier of fact. 32 V.S.A. §§ 4465, 4466. As such the Board of Tax Appraisers proceeds *de novo* and determines the correct valuation of the property. 32 V.S.A. § 4467. *In re Petition of Reed*, 129 Vt. 102, 105, 272 A.2d 127 (1970). The ultimate decision of the Board of Tax Appraisers, as with the listers and the board of civil author-

ity, is focused upon the critical question of whether a taxpayer's property has been appraised at its fair market value within the legal concepts of that term, and in compliance with statutory requirements. *Pawlet* v. *Witherspoon, Commissioner,* 128 Vt. 120, 127, 259 A.2d 15 (1969).

This appears to be the first instance in which a court has been squarely presented with the impact of the Federal Power Act and Federal Power Commission regulations and decisions upon the fair market value of property for tax purposes.

The Town of Barnet urges that the Federal Power Act is in no sense a limitation on the market value of the property owned by New England Power Company which is subject to the provisions of that act, and relies heavily upon *Grand River Dam Authority* v. *Grand-Hydro,* 335 U.S. 359 (1948), and those cases which have followed it.

*Grand River Dam Authority* v. *Grand-Hydro, supra,* is clearly distinguishable from the case at bar because it dealt with the purchase price Grand River Dam Authority, as a federal licensee under the Federal Power Act, would have to pay for lands belonging to Grand-Hydro, which Grand River Dam Authority condemned under the laws of the State of Oklahoma, and later incorporated into the project for which it had obtained a license from the Federal Power Commission. Based on these facts the U.S. Supreme Court held the Federal Power Act has not so far affected the use or value of the land for power site purposes as to deprive it of all fair market value for those purposes. *Grand River Dam Authority* v. *Grand-Hydro, supra,* 335 U.S. at 372.

In the case at bar we have at issue a factual situation quite different from that presented in *Grand River Dam Authority* v. *Grand-Hydro, supra.* Here we are presented with the impact of the Federal Power Act and Federal Power Commission regulations and decisions upon the fair market value of property for tax purposes after that property has been incorporated into a project licensed under the Federal Power Act, and the dams and other necessary facilities for the transmission of power have been constructed and placed into use.

Under the provisions of the Federal Power Act, New England Power Company has a license lasting for a period of fifty years, of which its property in the Town of Barnet is subject to the conditions and restrictions thereof. 16 U.S.C.

§ 799 (1970). The license may be transferred only by the written approval of the Commission, and any successor or assign shall be subject to the conditions of the license. 16 U.S.C. § 801 (1970). The United States, on two years notice in writing, upon or after the expiration of the license, may take over and operate this project upon the condition it pays the net investment of New England Power Company in the project to New England Power Company. 16 U.S.C. § 807 (1970).

New England Power Company's property in the Town of Barnet may only be sold or otherwise transferred after an order secured from the Federal Power Commission has authorized it to do so. 16 U.S.C. § 824b(a) (1970). If this property were transferred the Federal Power Commission would require any part of the sale price over the depreciated original cost to be charged against the earned surplus, and not included in an account forming a part of the rate base. *Pennsylvania Electric Co.* v. *Federal Power Commission,* 188 F.2d 763 (3d Cir. 1951).

The rates which New England Power Company may charge are regulated by the Federal Power Commission and must be based upon the net investment in the project. 16 U.S.C. § 813 (1970). See also *Federal Power Commission* v. *Hope Natural Gas Company,* 320 U.S. 591 (1944). The net investment is the actual legitimate cost of the project less depreciation. 16 U.S.C. § 796(13). Any surplus earned above a specified reasonable rate of return on the net investment after the first twenty years of operation is required to be held in an amortization reserve. Such surplus reserves may, at the discretion of the Commission, be applied in reduction of the net investment, or be held until the termination of the license. 16 U.S.C. § 803(d) (1970).

For purposes of valuation for taxation, the fair market value of property is the price which the property will bring in the market when offered for sale and purchased by another, taking into consideration all the elements of the availability of the property, its use, potential or prospective, and all other elements (such as age and condition) which combine to give property a market value. Generally there is no one controlling element or factor. *In re Heath,* 128 Vt. 519, 524, 266 A.2d 812 (1970).

■ Several basic methods, or combinations of them, have been used in appraising the fair market value of real property. Three of them in general use are the cost approach, the income approach, and the market data approach. *Crawford v. State Highway Board,* 130 Vt. 18, 285 A.2d 760, 764 (1971), and cases therein cited. Fair market value should not rely upon one criterion and the values shown by the various methods of valuation should be weighed and not averaged by the board. *Petition of Mallary,* 127 Vt. 412, 419, 250 A.2d 837 (1969).

■ The bases of valuation for taxation purposes and for rate-making have been uniformly recognized as different. *Kittery Electric Company v. Assessors of Town,* 219 A.2d 728, 735 (Me. 1966). In the instance of rate-making the base is that of net investment while in the instance of taxation it is that of fair market value. The net investment is the actual legitimate cost of the project minus the depreciation, and as such differs from fair market value of the property because it does not take into consideration fluctuations in costs which have occurred since the date the actual legitimate costs of those items which make up a power plant were determined.

The inequities of holding to net book value were exemplified in *Public Service Company v. New Hampton,* 101 N.H. 142, 151, 136 A.2d 591 (1957), where it was

> ". . . illustrated by assuming two approximately equivalent plants in the same town, the first built in an era of high costs, such as the present, and the second built in a low-cost era such as we encountered in the '30's and may well experience in the future. Applying the net book cost theory in the event of construction during depressed prices, the town would be entitled to a higher tax value on the older plant than the newer one, though the latter was performing the same function, was equally well constructed, and contained newer and less worn equipment."

If the property owned by New England Power Company in the Town of Barnet was transferred there is nothing in the Federal Power Act or Federal Power Commission regulations and decisions to limit its transfer price as a matter of law to the net book value of the project. Thus property subject to

these regulations and decisions may still be transferred at a price greater than its net book value if the Commission holds the transfer to be "consistent with public interest." 16 U.S.C. § 824b(a) (1970). See also *Pennsylvania Electric Co.* v. *Federal Power Commission, supra.*

■ A further reason why taxation value should not be fixed at net book cost is because property taxes are a proper operating expense, and any erosion of the return on the utility may be compensated for by an increase rate. *Galveston Electric Company* v. *City of Galveston*, 258 U.S. 388 (1922). The taxing authority on the other hand is not free to adjust the rate of taxation in order to bring about equitable results among taxable properties. *Public Service Company* v. *New Hampton, supra,* 101 N.H. at 151–52.

■ For these reasons, it is clear that although the restrictions placed upon the property of New England Power Company in the Town of Barnet by the Federal Power Act and the Federal Power Commission restrict the fair market value of that property, it is clear they are but one factor which must be considered by the Board of Tax Appraisers. Thus we hold it was reversible error for the Board of Tax Appraisers to conclude as a matter of law the property of New England Power Company in the Town of Barnet subject to Federal Power Act and Federal Power Commission "restrictions as to sale and rate base, has no greater fair market value than its net book value at any given time."

The appellant, Town of Barnet, sought to introduce certain evidence in the case which was rejected by the State Board of Tax Appraisers. There appears no occasion to discuss these assignments of claimed error in view of the result in this case.

*Reversed and remanded to the Commissioner of Taxes to be by him recommitted to the State Board of Tax Appraisers.*

NOTE: Mr. Justice Keyser took no part in the consideration or decision in this case.