NEW HAVEN WATER COMPANY *v.* BOARD OF TAX REVIEW OF THE CITY OF NEW HAVEN

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued January 3—decision released March 26, 1974

*Richard G. Bell,* for the appellant (plaintiff).

*Roger J. Frechette,* assistant corporation counsel, for the appellee (defendant).

BOGDANSKI, J. The plaintiff, the New Haven Water Company, appealed from the 1966 and 1967 assessments of its personal property to the defendant board of tax review of the city of New Haven. The board refused to reduce the assessments and the plaintiff appealed to the Court of Common Pleas. The matter was referred to Hon. Patrick B. O'Sullivan, as a committee, who filed a corrected report confirming the action of the board. The plaintiff thereafter filed objections and exceptions to

the report, which were overruled, and the court rendered judgment for the defendant. From that judgment the plaintiff has appealed to this court.

A taxpayer who believes he has been aggrieved by the action of a board of tax review has a right of appeal to the Court of Common Pleas, where the matter is tried de novo. General Statutes § 12-118. That statute provides, in part, that "[t]he court shall have power to grant such relief as to justice and equity appertains," but the burden is on the plaintiff to show that it is aggrieved by the doings of the assessor and that its property has been over-assessed. *Bridgeport Gas Co.* v. *Stratford,* 153 Conn. 333, 337, 216 A.2d 439; *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 675, 154 A.2d 608.

The plaintiff is a privately owned public service company, within the meaning of General Statutes § 16-1, with headquarters in New Haven, Connecticut. It supplies water to the city of New Haven and its environs. As a public service company, its accounting procedures and rates are regulated by the public utilities commission. By commission regulation, the earned return permitted the plaintiff is based upon the original cost of the property employed in its business, less depreciation, with an allowance for working capital, materials and supplies. "Original cost" is defined by the commission to be the cost to the person first devoting the property to public service. The plaintiff's earnings have not exceeded the permitted rate of return.

This appeal challenges the 1966 and 1967 tax assessments of so-called Code 23 property, consisting of water mains, hydrant connections, meters and service connections, owned by the plaintiff and

located in New Haven. The Code 23 property is part of the plaintiff's water distribution system, which, the committee found, is its highest and best use. There is no market for the sale of Code 23 property apart from that distribution system, and its salvage value is negligible.

The city assessors found the value of the plaintiff's Code 23 property to be $7,511,923 on the 1966 and 1967 assessment dates. They reached this figure by determining the replacement cost and deducting an appropriate amount for depreciation. The plaintiff claimed that its property should have been valued by taking the original cost less depreciation, one of the three methods the assessors considered but did not adopt. The parties agree that the value of the Code 23 property on the 1966 and 1967 assessment dates according to the plaintiff's method of valuation was $4,653,938 and $4,748,399, respectively. Both the board of tax review and the committee approved the replacement cost less depreciation method for computing the value of the plaintiff's property.

On this appeal, the plaintiff claims that the assessors were required, as a matter of law, to use the original cost less depreciation method to determine the fair market value of its property. The plaintiff also asserts, in the alternative, that the committee erred by failing to take into account unique elements significantly affecting the value of its property, namely, the public utilities commission's rate restrictions and the fact that the property has no other use beyond that to which it is presently committed. The plaintiff has expressly abandoned its other assignments of error.

Utility company property is taxed at a fixed percentage of its "fair market value." General Statutes § 12-80. "Fair market value" is generally said to be the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal. *Portland Silk Co.* v. *Middletown,* 125 Conn. 172, 174, 4 A.2d 422; see also General Statutes § 12-63. Hence, fair market value is ordinarily best ascertained by reference to market sales. *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 87, 291 A.2d 715; *Sibley* v. *Middlefield,* 143 Conn. 100, 107, 120 A.2d 77. "But it does not follow that when the tax assessors cannot ascertain the market value of certain property, they cannot determine the valuation of that property for legal taxation. If the rule of taxation provided by statute cannot be applied, the law still commands that all property liable to taxation shall be put in the owner's list at its present true and actual valuation . . . . Hence, if the rule indicated cannot be followed, other means must and may be found by which the assessors can perform the duty the law has put upon them." *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 A. 91; *Sibley* v. *Middlefield,* supra, 106–107. "The present true and actual value" of personal property has been calculated by taking reproduction or replacement cost, with an adjustment for depreciation; *Federated Department Stores, Inc.* v. *Board of Tax Review,* supra, 80; *Connecticut Light & Power Co.* v. *Monroe,* 149 Conn. 450, 452, 181 A.2d 118; *Sibley* v. *Middlefield,* supra; *Connecticut Savings Bank* v. *New Haven,* 131 Conn. 575, 578, 41 A.2d 765; *Underwood Typewriter Co.* v. *Hartford,* supra; by capitalization of income; *Federated Department Stores, Inc.* v. *Board of Tax*

*Review,* supra, 83; *Lomas & Nettleton Co.* v. *Water-bury,* 122 Conn. 228, 231, 188 A. 433; *Somers* v. *Meriden,* 119 Conn. 5, 7–8, 174 A. 184; and by reference to original or historical cost, less depreciation; *Bridgeport Gas Co.* v. *Stratford,* 153 Conn. 333, 335, 216 A.2d 439; *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 393, 94 A.2d 1. As a rule, however, "[n]o one method is controlling; consideration should be given to them all, if they have been utilized, in arriving at the value of the property." *Sibley* v. *Middlefield,* supra, 107.

It is agreed that neither the market sales approach nor the capitalization of income method could be utilized to determine the value of the plaintiff's Code 23 property. The committee found that the replacement cost less depreciation method is widely used throughout the state, and is used to assess the taxable property of other public service companies.

The plaintiff claims that the assessors were required to value its Code 23 property by the original cost less depreciation method because there is no market for this property except as part of its water distribution system, and since any prospective buyer of that system would be regulated by the public utilities commission, the earning capacity of the Code 23 property in the hands of the buyer would be limited by commission regulation to a fixed proportion of its historical cost less depreciation. The plaintiff asserts that the replacement cost less depreciation method ignores the commission's limitation on earning capacity, and that only the historical cost less depreciation method accurately reflects what a prospective purchaser would offer for Code 23 property.

The original cost of the plaintiff's Code 23 property may have some bearing on its present value through its influence on future earnings. See 1 Bonbright, Valuation of Property, p. 146. But it does not necessarily follow as a matter of law from the limitation of earning capacity to a fixed percentage of original cost less depreciation that the fair market value of the Code 23 property would equal its original cost less depreciation. The price that a buyer would pay would depend on the exact rate of return allowed by the commission and the nature of alternative investment possibilities. It might also depend on the price that the buyer could negotiate for the remainder of the plaintiff's water distribution system.

It would also be unrealistic to hold the assessors to historical cost less depreciation. "The inequities of holding rigidly to the formula of net book cost for tax purposes can well be illustrated by assuming two approximately equivalent plants in the same town, the first built in an era of high costs, . . . and the second built in a low-cost era . . . . [T]he town would be entitled to a higher tax value on the older plant than on the newer one, though the latter was performing the same function, was equally well constructed, and contained newer and less worn equipment." *Public Service Co.* v. *New Hampton,* 101 N.H. 142, 151, 136 A.2d 591; *Kittery Electric Light Co.* v. *Assessors of the Town of Kittery,* 219 A.2d 728, 736 (Me.); *Barnet* v. *New England Power Co.,* 130 Vt. 407, 412, 296 A.2d 228.

Moreover, the historical cost less depreciation method is normally considered of dubious usefulness in determining present actual value. 1 Bonbright, op. cit., pp. 140–49. "In determining the present

value of the physical property of a public service corporation, the actual cost, with an allowance for depreciation and obsolescence, is not a conclusive test, for the money may have been improvidently expended, or by reason of a change in conditions parts of the works may have ceased to be of value, or the cost of labor and materials may have increased or decreased." 5 Nichols, Eminent Domain (3d Ed. Rev.) § 20.5 [1]. Replacement cost less depreciation (plus an allowance for delay when warranted) is deemed an acceptable measure of value "when the appraiser is justified in concluding that, were the property in question to be destroyed or lost, an owner would rationally replace it." 1 Bonbright, op. cit., p. 159. The replacement cost less depreciation method is generally considered to be a more reliable means of establishing value than the method urged upon us by the plaintiff. 5 Nichols, op. cit., § 20.5 [2]. On the state of the record we cannot say that as a matter of law the assessors should have valued the plaintiff's Code 23 property by the original cost less depreciation method.

The plaintiff contends, in the alternative, that the valuation cannot stand because the committee failed to take into account an important element affecting value, namely, the restriction on earning capacity imposed by the regulations of the commission. In determining value, the trier must consider everything that might legitimately affect value. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 688, 67 A.2d 851. The committee did, in fact, take into consideration the restrictive aspects of the commission's regulations. It found as a fact that the rate regulation "is a factor which *might* affect the price that another public service company would pay to acquire the

plaintiff's property." (Emphasis added.) The committee did not accept, however, the testimony of the plaintiff's expert witnesses as to how much a factor this restrictive regulation would be, or as to how precisely the historical cost less depreciation method actually would compute the price that a prospective purchaser would be willing to pay. The burden of proving how the rate restrictions affected the value of its property lay with the plaintiff. *Bridgeport Gas Co.* v. *Stratford*, 153 Conn. 333, 337, 216 A.2d 439. The credibility of the plaintiff's expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. *Hutensky* v. *Avon*, 163 Conn. 433, 438, 311 A.2d 92. Nor has the plaintiff challenged the findings of fact as not supported by credible evidence.

We conclude that the trial court did not err in ruling that the finding reasonably supported the committee's conclusion, that no erroneous rule of law material to the case was applied, and that the plaintiff failed to sustain its burden of proof.

There is no error.

In this opinion the other judges concurred.