**New England Power Company v. Town of Barnet**

[367 A.2d 1363]

No. 6-76

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed October 5, 1976

Motion for Reargument Denied November 4, 1976

500

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Plaintiff.

*Frederick M. Reed,* Williston, for Defendant.

Daley, J. This case involves an appeal by the Town of Barnet from findings of fact, conclusions and judgment rendered by the Caledonia Superior Court with respect to the valuation of property within the town owned by New England Power Company (NEPCO). A cross-appeal was taken by NEPCO challenging the lower court's findings and conclusions as to

the lack of comparable property within the town and the court's order listing NEPCO's property at fifty per cent of fair market value. The nature and extent of the property which is the subject of this appeal may be ascertained by reference to an earlier opinion of this Court involving the same parties and property. *Town of Barnet* v. *New England Power Co.*, 130 Vt. 407, 408, 296 A.2d 228 (1972).

In 1969, the Town of Barnet undertook a general reappraisal of the properties within its boundaries, as a result of which the appraisal of the NEPCO property was substantially increased. The present controversy between these parties relates to the proper valuation of this property for the years 1969 through 1973. The appraised value of the property for the years in question was as follows: 1969—$5,122,078; 1970—$7,500,000; 1971—$6,605,800; 1972—$6,579,800; and 1973—$6,579,800. The challenge by NEPCO of the 1969 valuation was the subject of an earlier appeal, *Town of Barnet* v. *New England Power Co.*, *supra*, in which we remanded the case to the Commissioner of Taxes. The parties by stipulation agreed that the 1969 valuation was to be consolidated with the valuation for the years 1970–1973 for hearing and determination by the Caledonia Superior Court. De novo hearings were held by that court in accordance with 32 V.S.A. § 4467.

After numerous days of testimony and the introduction of many exhibits, the court found that the fair market value of the total NEPCO property located in Barnet and Monroe, New Hampshire (this property is located on the Connecticut River, with major portions of the facilities being located in the Town of Monroe, New Hampshire) was, for all years in question, $17,500,000. The court ultimately found that the fair market value of NEPCO's taxable property in Barnet was as follows: 1969—$4,217,500; 1970—$4,200,000; 1971—$4,182,500; 1972—$4,112,500; and 1973—$3,955,000. Neither of the parties challenges the correctness of the court's findings with respect to the percentage of the NEPCO property located in Barnet. It also found that there were no other properties in the town comparable to NEPCO's property and was therefore unable to find that the listed value of the NEPCO property at fifty per cent of fair market value would not correspond to the listed value of comparable properties within the town.

The town on appeal argues that the superior court failed to make proper findings with respect to fair market value, that it erred in permitting a company officer to testify as to fair market value, that its motions for directed verdict should have been granted, and that the court improperly refused to reopen the case to allow it to present evidence tending to impeach the testimony of one of NEPCO's experts. In its cross-appeal, NEPCO contends that the lower court erred in ruling that there were no properties within the town comparable to the NEPCO property and that it also erroneously refused to list NEPCO's property at a value corresponding to the listed value of other properties in the community.

██ With respect to the town's contention that the superior court failed to expressly and specifically set forth the criteria and factors it employed in determining the fair market value of the property, we note upon examination of the record that the findings below, while both painstaking and extensive, are largely mere recitals of the testimony given. As we held in *Krupp* v. *Krupp*, 126 Vt. 511, 514, 236 A.2d 653 (1967), such recitals, because they do not indicate the credence placed upon the testimony by the trial court or the extent to which the testimony influenced the court's decision, do not measure up to the requisite standard.

The lower court findings indicate that the town's expert witness on fair market value, Mr. Blackburn, based his determination of fair market value upon a capitalization of income approach, with numerous calculations, assumptions, factors and estimates being included in his equation. It also found that NEPCO's rebuttal expert witness, Mr. Rose, set forth numerous adjustments, eleven in number, which in his opinion should have been included in the Blackburn formula. On the basis of the testimony of these two expert witnesses, the court concluded that "Blackburn omitted some necessary factors in his calculation, but that Rose's adjustments were excessive." It then found that "Based on the evidence presented, it is the Court's best judgment that the fair market value of the Plaintiff's property in the Towns of Barnet, Vermont, and Monroe, New Hampshire, for each of the years under review was $17,500,000."

■ In arriving at this ultimate conclusion, the court did not specify which of Mr. Blackburn's factors it discounted or which of Mr. Rose's adjustments it considered. There is also no indication as to whether or not it gave any consideration to NEPCO's testimony that the fair market value of the property was within a range of ten per cent below to ten per cent above net book value. The court may have had a basis for arriving at its fair market figure, but the findings of fact do not disclose it. As made, its findings of value are open to the suggestion made by the town that the court relied solely upon net book value, which, as we stated in our earlier opinion, is not a controlling factor. *Town of Barnet* v. *New England Power Co., supra,* 130 Vt. at 413.

■ "The purpose of findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and how the decision was reached." *Wells* v. *Village of Orleans, Inc.,* 132 Vt. 216, 221, 315 A.2d 463 (1974); *Dearborn National Casualty Co.* v. *Consumers Petroleum Co.,* 164 F.2d 332 (7th Cir. 1947); R. Field, V. McKusick & L. Wroth, Maine Civil Procedure §§ 52.1, 52.6 (1959). Such is the purpose of V.R.C.P. 52(a). If it were not the purpose, the preliminary notice of decision contemplated by the rule would be sufficient. Indeed, purported findings which merely recite testimony and give a decision within its range, if believed, are no more than a bare notice of decision. Parties complying with the rule are entitled to more, as a matter of law, than would be afforded by a general verdict in a jury trial. Even in a jury trial, special verdicts or interrogatories, properly submitted, can control a general verdict. V.R.C.P. 49. Findings serve the same purpose. They indicate how the ultimate conclusion is arrived at, and remove from that ultimate conclusion any suspicion that it is only a guess. Where, as here, no indication is given of the method of appraisal used by the lower court, and the weight given to value factors disclosed by the evidence, that purpose is not met.

■ Before proceeding to the claims of error raised by the cross-appeal, we will take this opportunity to discuss certain other issues raised in the town's brief. The first question relates to fair market value and the methods of determining such value where specific purpose, or so-called unique prop-

erty is involved. The town by its motions to dismiss, for directed verdict and new trial, as well as by objections to evidence introduced by NEPCO, focused upon the methods utilized by the company to prove fair market value. Particular attention was directed to NEPCO's use of net book value (original cost less depreciation) and the failure of NEPCO to present testimony as to the price a willing seller would agree to in an arms-length transaction. Testimony by a company official reflected his belief that single purpose property such as a public utility is rarely bought and sold in the market. This witness offered his expert opinion that fair market value lay within a range of ten per cent below to ten per cent above the net book value of the company property. Our review of the record convinces us that NEPCO presented other evidence in addition to this opinion testimony bearing upon value which could have been utilized by the court in its determination of fair market value. The failure of the witness to take into consideration the price a seller would agree to sell the property for does not warrant the striking of his opinion testimony regarding the price a purchaser would pay for the property at a given time.

■ This type of testimony is admissible as evidence of fair market value to aid the trier of fact in arriving at its ultimate determination of value. The opinions of well informed persons based upon the purposes for which the property is suited are to be considered in arriving at fair market value. The weight to be given such testimony is, of course, for the court. *Public Service Co.* v. *New Hampton,* 101 N.H. 142, 136 A.2d 591, 595 (1957).

NEPCO strongly contends in its brief that original cost less depreciation is an important, if not controlling, factor in determining fair market value. We previously held, with respect to this same property, that this is not a controlling factor as a matter of law. *Town of Barnet* v. *New England Power Co., supra.* Such a method was approved for valuation of water rights involved in a rate-making case. *Latourneau* v. *Citizens Utilities Co.,* 125 Vt. 38, 43, 209 A.2d 307 (1965). But the purpose of valuation in a rate case is vastly different from that in a tax case. *Town of Barnet* v. *New England Power Co., supra,* 130 Vt. at 412. In the rate case the objective is to insure

that the investor does not reap his guaranteed return on investment not made or that was made improvidently. So, the basis generally stated for valuation in a rate case is original cost less appropriate depreciation, or replacement cost less appropriate depreciation, whichever is lower.

Valuation for purposes of taxation is something vastly different. Under the statute, 32 V.S.A. § 4467, it is to be at fair market value, reduced or increased if necessary to correspond to valuations of comparable properties. As we suggested in *Village of Morrisville Water & Light Department* v. *Town of Hyde Park*, 134 Vt. 325, 360 A.2d 882 (1976), where there are no really "comparable" properties, the proportional contribution clause of our Vermont Constitution (Ch. I, Art. 9), as well as the Fourteenth Amendment to the United States Constitution, mandate that the taxing community reduce the listed valuation to the valuation level of other properties in general. See also *International Paper Co.* v. *Town of Winhall*, 133 Vt. 385, 387, 340 A.2d 42 (1975).

The establishment of market value as a test for valuation purposes presupposes a market. In instances such as this, where only a part of an integrated system is involved and where the owner enjoys a lawful monopoly, the difficulty, if not the impossibility, of finding an actual buyer is obvious. Yet to hold that there is no market value would mean that valuable property would entirely escape its just share of the burden of taxation. Courts recognizing this have acted accordingly and have considered all factors calculated to influence an assumed buyer and seller in a free market. See *Kittery Electric Light Co.* v. *Assessors of Town*, 219 A.2d 728, 737 (Me. 1966); *Public Service Co.* v. *New Hampton, supra.*

We do not here attempt to outline all the elements and appraisal approaches which may be utilized in arriving at fair market valuation. They are appropriate subjects for expert testimony to be properly evaluated by the trial court. The court has noted that the cost approach, the income approach, and the market data approach offer the parties means of determining fair market value. *Town of Barnet* v. *Central Vermont Public Service Corp.*, 131 Vt. 578, 580–81, 313 A.2d 392 (1973); *Town of Barnet* v. *New England Power Co., supra*, 130 Vt. at 412. Original cost less depreciation may be a

506

method of arriving at fair market value if it reflects present costs. These original costs, however, must be trended, usually by some reliable index, so that they will in effect become present reproduction costs. Such costs less appropriate depreciation then become an element of valuation to be considered by the court in its appraisal.

The production capacity of the facility, as limited by size or applicable regulation, and the market value of the power it produces, would be limiting factors on valuation, since no one would buy or construct a facility whose product could not be sold at the price dictated by its cost. Similarly, if the site is unique and the demand for the power produced is high, the market value to a hypothetical buyer (hypothetical because of the monopoly enjoyed by the owner) might well be enhanced beyond reproduction costs. Distance from market, with resulting transmission costs, could also be a factor. So could the nature of the taxing community itself. A very rural, perhaps unorganized, community with few fiscal demands could be expected to produce lower tax demands than a more urban community. This could well affect fair market value.

There is no rigid formula which can be used to arrive at the correct valuation of NEPCO's property, situated as it is in two states and being a part of a large integrated system. Nor is specific weight required to be allocated to the several appraisal approaches or a combination of them which may be utilized in arriving at fair market value. Judgment is the keystone. If the court has considered and assigned such weight to each value indicator as appears to be fair, just and equitable according to the evidence presented, this Court will not disturb its conclusions on appeal absent errors of law. See *New England Power Co.* v. *Town of Littleton*, 114 N.H. 594, 326 A.2d 698 (1974). The difficulty here presented is that we cannot, from the record, determine to what evidence the court gave credence, or upon what factors it based its valuation. Since it is impossible to determine whether the court abided by the standard of a result within the range of judgment, exercised upon tenable grounds, we must reverse and remand for a new hearing on all issues.

Although we reverse and remand on the basis of the insufficiency of the lower court's findings of fact, we nevertheless take this opportunity to address certain other issues which

have been raised by the parties on appeal and cross-appeal. The town claims that NEPCO failed to sustain its burden of proof as required in a 32 V.S.A. § 4467 hearing. In *Village of Morrisville Water & Light Department* v. *Town of Hyde Park,* 131 Vt. 590, 313 A.2d 22 (1973), we held that under 32 V.S.A. § 3659 (pertaining to the taxation of municipally owned property within another municipality) the burden of proof in establishing substantial compliance with all statutory requirements resided with the taxing authority. *Id.* at 593. In our most recent opinion regarding litigation under § 3659, *Village of Morrisville Water & Light Department* v. *Town of Hyde Park,* 134 Vt. 325, 360 A.2d 882 (1976), we noted that § 4467, unlike § 3659, deals with property normally subject to taxation, and we intimated that the burden of proof under § 4467 might be on the taxpayer rather than on the taxing authority.

■■ This Court has recognized that a presumption of validity and legality attaches to the actions of the listers. *Fayetteco, Inc.* v. *City of South Burlington,* 131 Vt. 625, 628, 313 A.2d 3 (1973); *Villeneuve* v. *Town of Underhill,* 130 Vt. 446, 454, 296 A.2d 192 (1972). When, in litigation under § 4467, the town introduces the appraisal of the taxpayer's property into evidence, the burden of going forward with the evidence to overcome the presumption resides with the moving party. *Beardsley* v. *Board of Assessors,* 343 N.E.2d 359, 361 (Mass. 1976); *Shoppers' World, Inc.* v. *Board of Assessors,* 348 Mass. 366, 203 N.E.2d 811 (1965). The burden of producing evidence to overcome the presumption is satisfied by the introduction of credible evidence fairly and reasonably tending to show that the property was assessed at more than fair market value or that the listed value exceeded the percentage of listed value actually applied to the general mass of property in the community. When such evidence is presented, the presumption in favor of the listers "disappears and goes for naught." *Tyrrell* v. *Prudential Insurance Co. of America,* 109 Vt. 6, 23–24, 192 A. 184 (1937). Upon the introduction of such evidence, if the town is to prevail, it must meet its burden of justifying the appraisal by producing evidence demonstrating substantial compliance with constitutional and statutory provisions relative to uniformity as well as fair market value.

■ It is to be emphasized, however, that the burden of persuasion as to the contested issues in a § 4467 hearing remains at all times with the taxpayer. *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 348 A.2d 641, 642 (1974) ; *New England Power Co.* v. *Town of Littleton, supra; Rien* v. *Board of Equalization,* 190 Neb. 481, 209 N.W.2d 144, 146 (1973); *Crossroads Center (Rochester), Inc.,* v. *Commissioner of Taxation,* 286 Minn. 440, 176 N.W.2d 530, 534 (1970); *Kittery Electric Light Co.* v. *Assessors of Town, supra,* 219 A.2d at 744; 72 Am.Jur.2d *State and Local Taxation* § 1151. Since we are reversing and remanding this case to the superior court on the basis of other issues discussed in this opinion, we need not pass upon the sufficiency of the evidence presented by either party to meet its respective burdens.

■ ■ The town also contends that the lower court erroneously allowed a certain NEPCO witness to testify as an expert witness regarding fair market value. The record shows that this witness held a position of high corporate responsibility with NEPCO, that he had been in the taxpayer's employ for over twenty-five years, that he was familiar with the financial and other accounting aspects of public utilities, and that he was thoroughly familiar with the property which was the subject of litigation. The decisions of this Court clearly establish that questions relative to the qualifications of a witness to be considered an expert witness are matters properly left to the lower court's discretion. *In re P. F.,* 133 Vt. 64, 66, 329 A.2d 632 (1974) ; *Cross* v. *Estate of Patch,* 123 Vt. 11, 16, 178 A.2d 393 (1961). This Court will not review a lower court's finding of competence to testify as an expert absent a showing that such finding was clearly erroneous or was founded upon an error of law. *Alling Construction Co.* v. *Bissette,* 132 Vt. 331, 333, 318 A.2d 666 (1974). Any challenges with respect to this witness's knowledge of utility sales elsewhere in the nation, or with respect to his limited experience in testifying in courts of law, are matters which address themselves to the weight to be given his testimony, not to his competence to testify as an expert. No error appears.

NEPCO in its cross-appeal argues that the lower court erred in finding that there were no properties "comparable" to

that held by NEPCO within the town and hence the NEPCO property should be listed at fifty per cent of fair market value as required by 32 V.S.A. § 3481. The lower court, in an action challenging property tax assessments, must be mindful not only of 32 V.S.A. § 3481, but also of the constitutional and statutory mandates which require uniformity of appraisals. Chapter I, Article 9 of the Vermont Constitution; Fourteenth Amendment to the United States Constitution; 32 V.S.A. §§ 4601 and 4467. Indeed, this Court has recognized that

> it is of more urgency to examine the uniformity of the appraisals and the equitability of them on a comparable value basis, than it is to test them for precision with respect to market value. [*International Paper Co.* v. *Town of Winhall, supra,* 133 Vt. at 387–88.]

32 V.S.A. § 4467 requires that listed value of property correspond to the listed value of "comparable" properties within the town. This statute was enacted to insure that a taxpayer be granted treatment commensurate with that given his fellow taxpayers within the taxing community. The limiting effect of the term "comparable" properties when single purpose or unique property is the subject of litigation has not been previously resolved by this Court. The town would have us construe the equalization feature of § 4467 as applicable only to properties of the same general type or use within the town. Thus, a taxpayer owning unique property within a taxing authority would have no legal recourse if his property was listed at fifty per cent of fair market value while all other property in the district was listed at twenty-five per cent of fair market value. We feel that this approach makes neither good law nor good sense. We will not presume that the Legislature intended to enact a statute with unjust or unreasonable results. *International Business Machines Corp.* v. *Department of Taxes,* 133 Vt. 269, 275, 336 A.2d 158 (1975); *In re Preseault,* 130 Vt. 343, 348, 292 A.2d 832 (1972).

The courts of other jurisdictions, in determining questions such as the one presently facing this Court, have held that, in order to comply with constitutional requirements with respect to uniformity, all properties within a taxing district are "comparable" for purposes of constructing an appropriate ratio between fair market value and listed value. *Kittery Elec-*

*tric Light Co.* v. *Assessors of Town, supra,* 219 A.2d at 741; *Deitch Co.* v. *Board of Property Assessment, Appeals & Review,* 417 Pa. 213, 209 A.2d 397, 402 (1965).

We therefore hold that where unique property is the subject of litigation under § 4467 all property within the taxing municipality is comparable for purposes of determining the proper corresponding listed value. Such interpretation of § 4467 fully comports with the Vermont Constitution, the United States Constitution and 32 V.S.A. § 4601.

Before the lower court, NEPCO attempted to establish proof of the prevailing listed value within the town by presenting evidence of a so-called "sales ratio" study. This study was basically an analysis of certain arms-length property transactions within the town intended to determine the average of ratio between the sales price of land actually sold in Barnet and the listed value of such land. The lower court was of the opinion that the sales ratio study presented into evidence complied with the standards and conditions of the Vermont Department of Taxes. Nevertheless, the court felt that the inclusion of "non-comparable" property within the study, along with the study's small sample size, limited its probative value. It therefore refused to list the NEPCO property at the same ratio shown to be prevailing by the study.

In view of this Court's opinion regarding the effect of comparable property upon the equalization aspect of § 4467, the lower court's treatment of the sales-ratio study is erroneous. The prevailing ratio of other properties within the town is a factor to be considered in determining the proper listed value of unique property. Sales-ratio studies have been accepted by the courts of other jurisdictions as a proper method of proving such prevailing ratio. *Southern Bell Tel. & Tel. Co.* v. *County of Dade,* 275 So.2d 4 (Fla. 1973); *Tri-Terminal Corp.* v. *Borough of Edgewater,* 68 N.J. 405; 346 A.2d 396, 400 (1975); *Kittery Electric Light Co.* v. *Assessors of Town, supra,* 219 A.2d at 741; *Deitch Co.* v. *Board of Property Assessment, Appeals & Review, supra.* This Court accepts the position that properly conducted and analyzed sales-ratio studies may be of probative worth in determining the actual prevailing ratio within a taxing community. The size of the

study's sample, and the transactions which are excluded from the study, are factors which the lower court may properly take into account in weighing the study's probative value.

The lower court's findings of fact and conclusions of law upon the issue of uniformity are not only erroneous but also prejudicial to the vital constitutional and statutory rights afforded NEPCO under 32 V.S.A. § 4467, compelling our conclusion of reversible error. Because of our holdings, it is unnecessary to pass upon any other claims of error raised by either party.

*The judgment of the Caledonia Superior Court is reversed, and the cause is remanded for a new hearing on all issues in accordance with the views herein expressed.*