NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 42

No. 24-AP-161

| | |
|---|---|
| In re Cote/Maquam Shore Market (Janet Cote, Appellant) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | April Term, 2025 |

Thomas S. Durkin, J.

Megan Nelson and Alexander J. LaRosa of MSK Attorneys, Burlington, for Appellant.

Charity R. Clark, Attorney General, and Melanie Kehne, Assistant Attorney General, Montpelier, for Appellee Agency of Natural Resources.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **EATON, J.** This appeal concerns a dispute over reimbursements from the Petroleum Cleanup Fund (PCF). Appellant Janet Cote owns a property which was once the site of a gas station. After the discovery of significant petroleum contamination in the soil on her property, she applied for and received reimbursement from the PCF. The issues on appeal stem from the Agency of Natural Resources' decision to deny further reimbursement for costs associated with a licensed engineer and with a "punch list" of additional items on Cote's property. The Environmental Division affirmed the Agency's decision in part and reversed in part. Cote now appeals the reimbursements she claimed which were denied by both the Agency and then the Environmental Division. We reverse and remand.

## I. Legal Framework

¶ 2.     Some background on the applicable statues and rules is helpful to understanding the issues on appeal.  Section 1941 of Title 10 creates the "Petroleum Cleanup Fund."  The statute allows the Secretary of Natural Resources to authorize disbursements from the PCF "for the purpose of the cleanup and restoration of contaminated soil and groundwater caused by releases of petroleum . . . from underground storage tanks."  10 V.S.A. § 1941(b).  The statute also caps disbursements from the PCF.  Relevant to this case, the statute limits disbursements to $1,240,000.00 for corrective action related to underground petroleum tanks used for commercial purposes.  Id. § 1941(b)(1)(A).

¶ 3.     Pursuant to 10 V.S.A. § 1941, the Agency of Natural Resources adopted the Procedures for Reimbursement from the Petroleum Cleanup Fund.  These Procedures establish the standards for "receiving reimbursement from the Petroleum Cleanup Fund" and "provide guidance for owners and permittees of petroleum storage tanks" when submitting claims from the PCF.  Procedures for Reimbursement from the Petroleum Cleanup Fund, Chapter 1, https://anrweb.vt.gov/PubDocs/DEC/Hazsites/770041.test.pdf [https://perma.cc/3674-HRHT].  The Procedures also specify what costs may be eligible for reimbursement from the PCF.  Id. Chapter 6.  Broadly, owners of tanks "who demonstrate that cleanup costs incurred are not covered by insurance, may be eligible for reimbursement from the PCF."  Id. Chapter 2.  Specific eligible costs include: "[r]easonable costs of the removal, transportation, treatment, and disposal of petroleum contaminated soils" caused by a release from a tank; "[a]ll reasonable costs, subject to eligibility criteria established [by the Procedures] associated with the investigation, remediation and/or monitoring of releases . . . which have been pre-approved;" and "reasonable pre-approved costs to address petroleum contamination . . . encountered during a capital improvement."  Id. Chapter 6 (1), (4), (9).

¶ 4.    The Procedures also list costs that are not eligible for reimbursement from the PCF. Id. Chapter 7.  Among others, these include "[c]onsultants who have not been approved," "[a]ll costs which were not pre-approved," "[c]osts in excess of '[r]easonable' costs," "[c]osts in excess of [the] fee schedule," "[a]ny cost that is incurred as a result of making a capital improvement that has not been preapproved," and "[c]osts to repair any subsurface utility or structure (e.g. [w]ater, sewer, or tank line) that was unintentionally damaged during the site investigation or remediation." Id. Chapter 7 (2), (6), (7), (8), (16), (31).  The Procedures also clarify that a "[r]easonable cost can be determined by . . . [the] submittal of a work proposal and cost estimate for review and approval." Id. Chapter 7 (7).  Once a proposal has been submitted for review, the Department of Environmental Conservation "will compare the work proposal and cost estimate to past costs for similar work performed over the past three years of the PCF, as a means of determining reasonableness." Id.  When the Agency determines that a cost is ineligible for reimbursement from the PCF, the Procedures require that the Agency "individually address[]" each claim "with an explanation as to why a particular claim is not eligible for reimbursement." Id. Chapter 10.

## II.  Facts

¶ 5.    Cote's property was once the site of a gas station with two associated underground storage tanks, a convenience store, an upstairs apartment, and a camper hook-up area (together, the building).  The property also had an on-site wastewater treatment system and leach field.  In 2000, the Agency of Natural Resources directed Cote to remove the two underground storage tanks associated with the gas station, install monitoring wells, and pursue other remedial actions.  Over a decade later, in 2012, a neighbor crashed a tractor into the building damaging it beyond repair. The building's foundation was unaffected.

¶ 6.    Cote then began the process of reconstructing the building and applied for permits from the St. Albans Development Review Board.  The Board issued a building permit, but because the property was the site of a former gas station, the permit required Cote to submit documentation

3

of testing for contamination or remediation done to the soil. The results of that testing revealed that the prior remediation efforts in 2000 were insufficient and that petroleum contamination persisted. Based on those results, the Agency determined that the contaminated soil must be excavated and removed from the property. Because the building needed to be taken down to its foundation, the foundation was also removed to allow for better access to the significant amount of contaminated soil on the property. Furthermore, during the excavation process, the wastewater system was damaged and all utilities, including electrical services, were excavated.

¶ 7. Ultimately, the petroleum contamination of the soil was successfully remediated, and Cote and her contractors were reimbursed over $485,000 from the PCF for the investigation, cleanup, and restoration of the property. However, some lingering issues persisted. The Agency had pre-approved plans to reconstruct the wastewater system and directed Cote's consultants to complete the work on the system before her permit for the work expired. The Agency also asked Cote to submit a "punch list" of items that she believed remained to be completed to restore the property. Cote submitted that punch list and the Agency responded, separating the items on the list into two categories: (1) reimbursable outstanding requests and claims; and (2) costs identified "as ineligible for reimbursement." We summarize the relevant denied requests and the Agency's corresponding rationales below, separating them into an analysis of the request for a licensed engineer and the other punch list items.

A. General Contractor/Licensed Engineer

¶ 8. Cote requested approval for costs to hire a licensed project engineer to serve as a general contractor to plan and oversee the remaining work. Cote asserted that this cost was necessary because the town would not approve the site following the restoration of the property without a certification from a Vermont-licensed engineer. The Agency denied these costs on the grounds that all the eligible work was complete and that the costs associated with additional site work "exceeded reasonable costs."

4

## B. Other Punch List Items

¶ 9. The Agency also denied Cote's requests to cover costs for electrical work, concrete work, and most of the other items on Cote's punch list. These other items were: additional erosion control or safety measures, restoration of the property, constructing a travel area for access to the camper, repairing a damaged flagpole, reestablishing boundary lines, a site certification for compaction, sketches of a neighbor's water line, correcting septic work performed by a contractor, additional work on the wastewater system, filling truck ruts, placing topsoil at the property line, installing drainage outfall, removing a small stone debris pile, tree removal and replacement, and redesign of a second-story staircase. The Agency's letter identified each cost as ineligible for reimbursement.

## III. Decision Below

¶ 10. Cote appealed the Agency's decision to the Environmental Division. She argued that the Agency abused its discretion when it denied reimbursements for the engineer, electrical work, concrete work, wastewater work, and the other punch list items. The Environmental Division held a two-day hearing on the merits and issued a decision which affirmed in part and reversed in part the Agency's determinations. In keeping with the required standard of review, the Environmental Division recognized the Agency's discretion in interpreting the relevant regulations and statutes that it administers within its area of expertise. See In re ANR Permits in Lowell Mountain Wind Project, 2014 VT 50, ¶ 11, 196 Vt. 467, 98 A.3d 16. It placed the burden on Cote, as the party alleging abuse of discretion, to demonstrate that abuse. See In re Morrisville Hydroelectric Project Water Quality, 2019 VT 84, ¶ 41, 211 Vt. 233, 224 A.3d 473. The court also reviewed de novo the Agency's decision applying its interpretation of the relevant regulations and statutes to the facts. See 10 V.S.A. § 8504(h) ("The Environmental Division, applying the substantive standards that were applicable before the tribunal appealed from, shall hold a de novo hearing on those issues that have been appealed.").

5

¶ 11.    In its decision, the court addressed Cote's requests for the engineer, electrical work, and concrete work separately and the remaining requests collectively.  The court concluded that the Agency must reimburse Cote for the additional expenses to complete the electrical work, the concrete work, and the wastewater work.  The Environmental Division based this decision on the fact that the Agency had pre-approved these requests as PCF-eligible expenses and that its subsequent conclusion that the work was ineligible was unreasonable and an abuse of discretion.  However, the court held that the Agency reasonably denied Cote's request for the licensed engineer and the remaining punch list items.

¶ 12.    The Agency did not appeal the Environmental Division's decision requiring the Agency to reimburse expenses for the electrical work, concrete work, and wastewater work and those items are not part of this appeal.  However, Cote appealed the Environmental Division's decision denying reimbursement for the licensed engineer and the punch list items to this Court.  She argues that the Environmental Division erred when it determined that the Agency's decisions concerning the licensed engineer and punch list items were reasonable, consistent with the law, and fully supported by the facts presented.  She also argues that the court erred in its interpretation of 10 V.S.A. § 1941.  We outline the Environmental Division's reasoning concerning the denial of reimbursement for each item in our analysis below.

IV.  Analysis

¶ 13.    "We review the Environmental Division's legal conclusions de novo and its findings of fact for clear error."  In re N. E. Materials Grp., LLC/Rock of Ages Corp. Act 250 Permit, 2019 VT 55, ¶ 6, 210 Vt. 525, 217 A.3d 541.  We will overturn the Environmental Division's factual findings if, "taking them in the light most favorable to the prevailing party, they are clearly erroneous, meaning that there is no credible evidence to support them."  In re Katzenbach A250 Permit #7R1374-1, 2022 VT 42, ¶ 11, 217 Vt. 155, 287 A.3d 36 (quotation omitted).

6

¶ 14. "It is the trial court's province as the finder of fact to 'determine the credibility of witnesses and weigh the persuasive effect of evidence.' " In re Ranney Dairy Farm, LLC, 2024 VT 66, ¶ 8, __ Vt. __, 327 A.3d 886 (alterations omitted) (quoting In re Route 103 Quarry, 2008 VT 88, ¶ 4, 184 Vt. 283, 958 A.2d 694). Despite this deference, "we will not speculate as to the basis upon which the court made its findings and reached its conclusions, where the court's decision does not spell out this basis." Kanaan v. Kanaan, 163 Vt. 402, 407, 659 A.2d 128, 132 (1995). Instead, "findings must be adequate to support conclusions." Id. "The purpose of findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and how the decision was reached." Wells v. Vill. of Orleans, Inc., 132 Vt. 216, 221, 315 A.2d 463, 466 (1974). Consequently, a trial court's findings are "insufficient when [this Court is] left to speculate as to the basis of the trial court's decision." Bonanno v. Bonanno, 148 Vt. 248, 251, 531 A.2d 602, 604 (1987).

### A. The General Contractor/Licensed Engineer

¶ 15. We first consider Cote's request for costs associated with hiring a licensed engineer to serve as a general contractor. In its findings of fact, the court stated that "[t]he Agency denied [the engineer's] proposal on the grounds that all PCF eligible work [was] complete and that the costs associated with additional site work exceeded reasonable costs." In its conclusions of law, the court stated that "the Agency has consistently denied [Cote's] request on the grounds that a general contractor is not a reimbursable expense." The decision also summarized the Agency's argument that the engineering work would not be "for purposes of cleanup and restoration of the contaminated soil" and reiterated the Agency's statement that "all site management activities [were] complete and that the site [was] eligible for closure." The court also stated that the Agency had "determined that the initial estimate was too expensive" and later determined that the engineering firm's reduced-scope estimate was "ineligible for PCF reimbursement." Finally, the

7

court reiterated the Agency's representative's testimony that "he [was] unaware of any past PCF reimbursements being used to hire a general contractor."

¶ 16.    The court articulated that the Agency had discretion to authorize reimbursements, citing the language in 10 V.S.A. § 1941 that "[t]he Secretary may authorize disbursements from the [PCF] for the purpose of the cleanup and restoration of contaminated soil and groundwater caused by releases of petroleum." It concluded that "[t]his discretionary authorization clearly applies to remediation of contamination and does not necessarily authorize funds for the costs associated with bringing the Property into compliance with other state and local land use standards." It further stated that the Agency's Procedures support the court's interpretation because they disallow "reimbursement for capital improvement costs and costs in excess of reasonable costs." The court concluded that "the Agency's determination not to reimburse [Cote] for a general contractor/engineer was reasonable, consistent with the law, and fully supported by the facts presented."

¶ 17.    In sum, the court cogently articulated the issue: the parties disagree about whether engineering work to bring the property up to code is eligible for reimbursement from the PCF and whether the Agency's ultimate determination was reasonable. The court also clearly articulated its conclusion that the Agency's determination to deny reimbursement for the licensed engineer was likewise reasonable. See Morrisville Hydroelectric Project, 2019 VT 84, ¶ 41 ("An agency does not have the burden of proving that its interpretation or methodology is the best one. . . . All that is required is that the agency has a reasonable basis for its action."). However, here, while the court's conclusion itself is clear, the court failed to provide an adequate basis for its conclusion that the Agency correctly denied reimbursement for the engineer.

¶ 18.    Specifically, the court did not adequately explain why it considered the Agency's denial of this expense to be reasonable. The decision merely restates the Agency's conclusory arguments that the cost was ineligible because all eligible work was complete and that the costs

8

were in excess of what was reasonable. See New England Power Co. v. Town of Barnet, 134 Vt. 498, 503, 367 A.2d 1363, 1367 (1976) (stating "purported findings which merely recite testimony and give a decision within its range, if believed, are no more than a bare notice of decision" and are inadequate under V.R.C.P. 52). While quoting the Procedures' statement that capital improvements are ineligible for reimbursement, the court presumably agreed with the Agency that the costs for the licensed engineer were an ineligible "capital improvement" but failed to outline how either the Agency or the court defined that term or arrived at that conclusion. The court also failed to adequately describe why the Agency's conclusion was reasonable based on the specific facts of the case relative to the relevant statute and Procedures. See In re Vt. Gas Sys., Inc., 2024 VT 19, ¶ 52, 219 Vt. 193, 316 A.3d 231 (explaining that while agencies have broad authority to fashion their rules of procedure, their interpretation and application of their rules must be consistent and align with statutory mandate and legislative policy). Further, the court did not explain whether the Agency representative's unawareness of "any past PCF reimbursements" was credible or why that lack of knowledge was sufficient justification to determine "reasonable costs" of the licensed engineer's work. See State v. Huston, 2020 VT 46, ¶ 12, 212 Vt. 363, 236 A.3d 1291 ("The lack of findings as to . . . the credibility assigned to [the testimony], and the weight the court chose to give it hampers our ability to resolve the issue before us."). In short, the court reached a conclusion without providing the necessary reasoning to support it.

¶ 19. It is true that "the burden rests on the party challenging the [Agency's] interpretation to show that it is unreasonable." Morrisville Hydroelectric Project, 2019 VT 84, ¶ 41. In keeping with this requirement, the court found that Cote "presented no evidence to show that any additional work related to the contamination cleanup is needed for the site" and summarized Cote's argument that "because she was not responsible for the contamination, and because she is a small business owner, it is the responsibility of the Agency to cover all costs associated with restoration of the Property, including required engineering certificates." The court

9

concluded that "there is no legal basis for such an expansive interpretation of the PCF statute and Procedures." Nevertheless, the required analysis to reach the court's stated conclusion necessitates, at minimum, findings of fact regarding the Agency's reasoning beyond repeating its conclusory statements. See Huston, 2020 VT 46, ¶ 12 (holding that trial court must make findings on elements essential to disposition of issues).

¶ 20. "The purpose of findings is to make a clear statement to the parties, and to this Court, if appeal is taken, of what was decided and how the decision was reached." New England Power Co., 134 Vt. at 503, 367 A.2d at 1366. Without further facts or discussion of the adequacy of the Agency's reasoning, the decision below is insufficient because we are left to speculate about "how the [court's] decision was reached." Wells, 132 Vt. at 221, 315 A.2d at 466. "When this Court is left in a position where it must speculate as to the basis upon which the trial court reached its decision, we will refuse to so speculate." Roy's Orthopedic, Inc. v. Lavigne, 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982). The paucity of findings and corresponding legal analysis would require such speculation here.

B. The Punch List Items

¶ 21. Next, we turn to the court's discussion of the "punch list" items. In its findings of fact, the court listed the twenty items on the punch list that the Agency identified as ineligible for reimbursement from the PCF. The court described that "[i]n general, these items were never pre-approved by the Agency, and do not involve invoices that have been submitted . . . pursuant to the PCF Procedures for Reimbursement." In its conclusions of law, the court analyzed the items collectively, stating "[t]he remaining work items in [Cote]'s punch list are only incidentally related to the clean-up" and that "[m]any of these items relate to disputes between [Cote] and her various contractors, which the Agency is under no obligation to resolve."

¶ 22. Regarding the Agency's analysis, the court stated that "[t]he Agency determined that the remaining items in [Cote]'s punch list [were] ineligible for PCF reimbursement on the

grounds that they constitute[d] capital improvements unrelated to the clean-up of contamination" and that "[f]or each of these items, the Agency provided testimony at trial supporting its determinations, and demonstrating these types of costs are ineligible PCF expenses." The court further explained that "the Agency relied on its interpretations of the PCF Procedures and classified these items as capital improvements" and stated that "[t]he Agency was consistent in denying reimbursement for these items and did not apply its standards arbitrarily."

¶ 23. The court again cited 10 V.S.A. § 1941 and the Procedures. It highlighted that both the statute and Procedures confer broad discretion to the Agency and stated that "[c]apital improvements costs are ineligible for reimbursement." The court concluded that "the Agency's decisionmaking was reasonable" and affirmed the Agency's decision "[b]ecause these remaining items are not directly related to the petroleum cleanup, and because [Cote] has not provided evidence to the contrary."

¶ 24. We find this analysis lacking. As above, the court did not explain why the Agency's denial for each specific item was reasonable. The decision provides no analysis of the Agency's reasoning for denying each vastly dissimilar punch list item request—merely restating the Agency's generalized and conclusory arguments that the items were capital improvements and unrelated or incidentally related to the contamination cleanup. Krupp v. Krupp, 126 Vt. 511, 513, 236 A.2d 653, 655 (1967) (explaining when trial court adopts one party's findings "it is in danger of being charged with overlooking the proper performance of its judicial function, and such practice is to be avoided, as should any procedure that suggests a failure to exercise independent judgment"). Additionally, the decision does not supply either the Agency's or its own interpretation of the term "capital improvement" or the bounds of the term "related to the contamination cleanup." In re MVP Health Ins. Co., 2016 VT 111, ¶ 20, 203 Vt. 274, 155 A.3d 1207 ("Adequate findings of fact are required, so that we may determine whether the sound discretion implicitly mandated by a statute was in fact exercised." (alterations and quotation

11

omitted)). The court's use of the terms "many" and "in general" when describing the punch list items forces us to speculate about whether and how each item is ineligible according to the Agency. Finally, while the court mentioned that the Agency "provided testimony at trial supporting its determinations," the mere acknowledgement that a party supplied testimony concerning an issue is insufficient as a finding of fact. See Huston, 2020 VT 46, ¶ 11 (stating trial court must consider all evidence bearing on issues with "impartial patience and adequate reflection" and "then formulate the findings couched in its own language" (quotation omitted)) ; Krupp, 126 Vt. at 514, 236 A.2d at 655 ("A recitation of evidence in findings is not a finding of the facts contained in the testimony related and it cannot be so construed.").

¶ 25. Without more findings or analysis of the Agency's reasoning, "we are left to speculate as to the basis of the trial court's decision" which we decline to do. Bonanno, 148 Vt. at 251, 531 A.2d at 604.

C. Other arguments

¶ 26. In their briefs, the parties articulate competing arguments concerning the appropriate definition of "capital improvements." The parties also disagree about the scope of 10 V.S.A. § 1941 and, specifically, how a court should analyze whether a cost is "incurred" by virtue of corrective action or whether a disbursement is "for the purpose of the cleanup and restoration of contaminated soil." 10 V.S.A. § 1941(b). While impactful to the decision, the trial court neither articulated how the Agency defined these terms nor concluded whether and why the Agency's definition was reasonable.

¶ 27. When the findings are insufficient, the proper recourse is to remand for additional proceedings. Amiot v. Ames, 166 Vt. 288, 294, 693 A.2d 675, 678-79 (1997). Here, the omitted facts and analysis in the decision are critical to the outcome of the disputed items. In addition, while the record includes some additional facts and reasoning put forward by the Agency in addressing Cote's requests for reimbursement, it is not this Court's "responsibility to assess the

12

evidence in the first instance." <u>Huston</u>, 2020 VT 46, ¶ 12. Therefore, we decline to reach the parties' arguments concerning the definition of the relevant terms and the scope of 10 V.S.A. § 1941 in the absence of the necessary factual findings made in the first instance by the trial court. See <u>Wood v. Wood</u>, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977) (stating this Court will not give "legal advice in anticipation of issues").

### V.  Conclusion

¶ 28.    We reverse and remand to allow the Environmental Division to make adequate factual findings and any additional conclusions as may be necessary on the disputed restitution claims.

<u>Reversed and remanded for further proceedings consistent with this opinion</u>.

FOR THE COURT:

_____

Associate Justice

13