BUREAU OF TAXATION

v.

TOWN OF MADISON.

Supreme Judicial Court of Maine.

Argued Jan. 5, 1988.
Decided May 31, 1988.

James E. Tierney, Atty. Gen., Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Donald E. Eames (orally), Eames, Sterns & Washburn, Skowhegan, for defendant.

Peter G. Rich, Portland, amicus curiae, for Madison Paper Industries.

James A. Buckley, Public Utilities Com'n, Augusta, amicus curiae, for P.U.C.

William C. Black, Augusta, amicus curiae, for Public Advocate.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

The Bureau of Taxation appeals from a judgment of the Superior Court, Kennebec County, affirming a decision of the State Board of Property Tax Review that lowered the state valuation of the Town of Madison from that set by the bureau. Because we agree with the bureau's argument that the board exceeded its statutory authority, we vacate the judgment.

The statutes involved in this appeal are contained in 36 M.R.S.A. §§ 201–458 (1978 & Supp.1987). Section 208 (Supp.1987) imposes on the bureau the duty of equalizing and adjusting the assessment lists of each municipality. When any municipality is aggrieved by the bureau's determination, that municipality may appeal to the board pursuant to section 272. In proceedings before the board the bureau has the burden of showing that its determination is reasonable and the municipality's claims are unreasonable. *Id.* § 272(3) (Supp.1987).

Madison's appeal to the board to review the bureau's assessment involved little, if any, factual dispute. For purposes of judicial review, we examine only the disagreement between the parties over the valuation of a hydroelectric facility owned by Madison Paper Industries. The facility is located on the town line between Madison and Anson, along the Kennebec River. The bureau assigned an equalized value of approximately $9.5 million to that portion of the plant located in Madison.[1] The town conceded and the board agreed that the bureau's valuation represented the fair market or just value of the Madison facili-

---

1. For our purposes the $9.5 million represents the same value as that assessed by the Town of Madison and is included in the $212.5 million that represents the total state valuation of the town of 1987.

ty. At the same time, two other hydroelectric facilities of similar size, age, and function located in adjacent municipalities were assessed at a substantially lower value by the bureau. Unlike the Madison facility, these other facilities are owned by Central Maine Power Company, and thus subject to regulation by the Maine Public Utilities Commission. The board concluded that the bureau had failed to justify this disparate treatment of similar facilities.

The record established that the bureau used one method of valuation for the facility in Madison, and a different method for the regulated facilities. As a result, the bureau's valuation of the Madison facility was substantially greater than its valuation of the regulated facilities located nearby. The parties disagree as to whether the fact of PUC regulation alone justifies the difference in the bureau's method of assessing the facilities. Because the board lacked the authority in this proceeding to raise the state valuation of those other towns, it elected instead to lower Madison's state valuation by $5.27 million. On the bureau's complaint for judicial review of the board's decision, the Superior Court affirmed the board. On appeal before us, the bureau argues that its disparate treatment of hydroelectric facilities is justified because PUC regulation substantially affects market value of the CMP-owned plants. The bureau argues further that the board acted beyond its statutory authority.

We conclude that the board misconceived its role in the tax equalization process and that it lacked any statutory authority to remedy a perceived inequality in the manner attempted. We thus need not address the question whether the bureau's disparate treatment was justified. For purposes of this opinion, we are concerned with the method of tax equalization applicable to municipalities. We use the term "state valuation" to mean "the equalized just value of all real and personal property in each municipality" that the Bureau of Taxation must certify to the Secretary of State pursuant to 36 M.R.S.A. § 305(1) (1978 & Supp.1987). That state valuation is utilized both to apportion county taxes among the municipalities and to calculate each munici-

pality's share of various state-funded programs and it must "be based on 100% of the current market value." *Id.*

Municipal assessors are required to transmit to the bureau a list of property assessed in their respective municipalities. 36 M.R.S.A. §§ 381–383 (1978 & Supp. 1987). The bureau must "equalize and adjust the assessment list of each town, by adding to or deducting from it such amount as will make it equal to its just value." *Id.* § 208 (Supp.1987). The "equalized just value shall be uniformly assessed in each municipality ... and shall be based on 100% of the current market value." *Id.* § 305. Thereafter, notice of the proposed valuation is sent to each municipality. *Id.* § 208. Any municipality aggrieved by the bureau's determination may appeal to the State Board of Property Tax Review. *Id.* § 272(1). After hearing, the board has the power to "raise, lower or sustain" the state valuation *with respect to the municipality which has filed the appeal.* *Id.* § 272(4)(A) (emphasis added). "If the board does not sustain the bureau's determination, it shall make its own reasonable determination giving due weight to the claims of the municipality and the Bureau of Taxation." *Id.* § 272(3).

We conclude that once the board had determined the validity of the bureau's assessment of the Madison facility at current market value, it was compelled to sustain the bureau's determination. The town conceded and the board found that the bureau had assessed the Madison facility at its fair market value or just value. The board's power to lower the bureau's valuation of the Madison facility was implicitly limited by the statutory mandate requiring that the assessment be based on market value. 36 M.R.S.A. § 305 (Supp.1987). Madison's claim that the facility be assessed differently to compensate for the bureau's disparate treatment of regulated facilities located in other municipalities must be addressed in a different forum. Neither the bureau, in assessing the Madison facility, nor the board, in fashioning a remedy, has the authority to deviate from fair market or just value.

The town relies on *Kittery Electric Light Co. v. Assessor of the Town of Kittery,* 219 A.2d 728 (Me.1966) for the assertion that where an assessment does not satisfy the constitutional and statutory goals of uniformity and just value, uniformity should take precedence. *Id.* at 733–34. Thus, the town argues, because the regulated facilities were not assessed at just value, the board's remedy of lowering Madison's assessment was proper because it achieved uniformity by bringing the valuation of the Madison facility in line with that of the regulated facilities. *See Farrelly v. Town of Deer Isle,* 407 A.2d 302, 307 (Me.1979).

We are not concerned with varying assessment practices within a single municipality. Rather, Madison has attacked the bureau's assessment of regulated hydroelectric facilities located outside the town. Clearly, the board has no authority to alter the bureau's assessment of municipalities not before it. The statute explicitly provides the board with the power to adjust the state valuation only "with respect to the municipality which has filed the appeal," in this case, the Town of Madison. 36 M.R.S.A. §§ 272(4)(A).

In sum, we do not decide the question whether the bureau improperly undervalued the hydroelectric facilities that are subject to PUC regulation. Rather, we hold that the board exceeded its statutory authority in attempting to correct the perceived inequality in valuation of the facilities by lowering the valuation of the Madison facility below the board's determination of market value. Accordingly, the judgment of the Superior Court must be vacated and the case remanded with direction that the Superior Court order the board to "sustain the state valuation as determined by the bureau."

The entry is:

Judgment vacated.

Remanded to the Superior Court for entry of judgment directing the State Board of Property Tax Review to sustain the state valuation of the Town of Madison.

McKUSICK, C.J., and NICHOLS, WATHEN and SCOLNIK, JJ., concur.

GLASSMAN, Justice, dissenting.

I must respectfully dissent to the court's interpretation of the duties imposed on the Bureau of Taxation (Bureau) and the powers given the State Board of Property Tax Review (Board) by 36 M.R.S.A. §§ 201–458 (1978 & Supp.1987). I believe the Board properly found that the Bureau had not sustained its burden of proof and the remedy fashioned by the Board did not exceed its statutory authority. Accordingly, I would affirm the judgment of the Superior Court.

Section 208 clearly states the Director of the Bureau "shall have the duty of equalizing the state and county taxes *among* the several towns and unorganized territory. He shall equalize and adjust the assessment list of each town, by adding to or deducting from it such amount as will make it equal to its just value...." (Emphasis added). That section further provides that notice of the Bureau's proposed valuations of each municipality within a county be sent by certified mail to each municipality in that county, that such valuation is subject to review of the Board, and that the valuation *finally* certified to the Secretary of State be used *"for all computations required by law* to be based upon the state valuation with respect to municipalities."* (Emphasis added).

Section 272 provides, *inter alia,* that the Board "shall hear appeals by any municipality aggrieved by the Bureau of Taxation's determination of equalized valuation...." It further provides, in pertinent part:

3. **Determination.** The Bureau of Taxation shall have the burden of showing that its determination is reasonable and the municipality's claims are unreasonable. The board shall sustain the determination of the Bureau of Taxation only upon finding that the bureau's determination is reasonable and the claims of the municipality are unreasonable. If the board does not sustain the bureau's determination, it shall make its own reasonable determination giving due weight

to the claims of the municipality and the Bureau of Taxation.

4. **Powers.** The board, after hearing, shall have the power to:

A. Raise, lower or sustain the state valuation as determined by the Bureau of Taxation with respect to the municipality which has filed the appeal;

. . . .

5. **Procedure following appeal.** The valuation determined on appeal shall be certified to the State Tax Assessor, who shall, if necessary, incorporate the decision in the valuation certified pursuant to section 305, subsection 1. . . .

Section 305 provides, in pertinent part, that "In addition to any other duties of the Bureau ... it shall ... certify to the Secretary of State ... the equalized just value of all real and personal property in each municipality. . . . Such equalized just value shall be uniformly assessed in each municipality ... and shall be *based* on 100% of the current market value." (Emphasis added).

In the instant case, the Town of Madison (Madison) on receiving the Bureau's proposed valuation of its hydroelectric facility[1] appealed to the Board. The following facts developed before the Board are not in dispute: The Madison hydroelectric facility (with an installed production capacity of 16,100 kilowatts) and the hydroelectric facility located in the Towns of Embden and Solon and that located in Skowhegan (with an installed production capacity of 13,000 and 12,000 kilowatts, respectively)[2] were all three similar in terms of location, age and use. The Bureau had proposed a valuation of the Madison facility at $1,019 per kilowatt capacity, while valuing the Solon–Embden and the Skowhegan facilities at $461 and $449 per kilowatt capacity, respectively. The facilities at Solon–Embden and at Skowhegan were regulated by the Public Utilities Commission (PUC), and the Madison facility was not. The Bureau acknowledged it had used a different method of determining the valuation of the Solon–Embden and Skowhegan facilities because those facilities were regulated by the PUC. To support its position, the Bureau offered the testimony of a PUC representative that the PUC must give prior approval to the sale of any regulated utility property and also as to some of the factors that would be considered by the PUC in the event of such sale.

The Board noted that the Bureau cited no authority for its contention that regulation by the PUC must be regarded as an encumbrance on the regulated property and found that the equivocal testimony of the PUC representative did not demonstrate a sufficient justification for the Bureau's disparate treatment of similar electrical generation plants. It concluded the Bureau had not sustained its burden of showing that its determination of Madison's equalized valuation "is reasonable" and that Madison's "claims are unreasonable." *See* § 272(3). The Board, having specifically noted that its statutory power to "raise, lower or sustain the valuation" of the Bureau could only be with respect to Madison, lowered the Bureau's proposed valuation of the Madison facility to the level accorded the other two facilities. *See* § 272(4)(A). It is the Board's "reasonable determination" of equalized just value that is required to be certified by the Bureau to the Secretary of State. *See* §§ 272(5) and 305(1). The Superior Court affirmed the Board's decision. On its appeal, the Bureau contends (1) the record does not contain substantial evidence to support the Board's decision and (2) even if the Board's decision were correct, the remedy prescribed is unconstitutional or an abuse of discretion because it further aggravates the lack of uniformity and results in a windfall for Madison.

As to the Bureau's first contention, a review of the record as a whole discloses that it contains such relevant evidence as a

---

1. By reason of the provisions of section 208, it can be assumed that at the same time Madison learned of the proposed valuation placed on other hydroelectric facilities in Somerset County.

2. All three facilities are located within municipalities in Somerset County.

reasonable mind might accept as adequate to support the Board's conclusion that the Bureau failed to establish that its determination is reasonable and Madison's claims are unreasonable. *See Macaro v. Town of Windham,* 468 A.2d 604, 605 (Me.1983).

The Bureau points to no authority for its second contention. It argues that by equalizing the valuation of these three hydroelectric facilities "among the several towns" of Somerset County, the town of Madison has received a windfall. That argument is not persuasive when considered with the fact that Madison appealed the Bureau's valuation and the Board's exercise of its statutory remedial power extends only to the municipality that has filed the appeal. *See* § 272(4)(A). Nor is the result a violation of article IX, § 8 of the Maine Constitution.

The court, in holding that the Board exceeded its statutory authority, points to the provision in section 305 that "equalized just value shall be *based* on 100% of the current market value" (emphasis added) and to the Board's finding that the valuation of the facility by the assessors for Madison for local tax purposes in 1985 and the valuation by the Bureau for equalizing the state and county taxes among the several towns for 1987, *did not* vary significantly and represented the fair market value of the facility.

Under the statutes at issue, the value placed on the property by the town of Madison is immaterial. Sections 108 and 273 establish that the determination of the equalized just value of this property is the sole responsibility of the Bureau in the first instance; if that determination is appealed, it then becomes the responsibility of the Board. We have previously stated that, "It is a fundamental rule of statutory construction that in order to determine the legislative intent in relation to a particular section of a comprehensive statute, courts should consider the statutory scheme in its entirety." *Faucher v. City of Auburn,* 465 A.2d 1120, 1124 (Me.1983). In considering the entire statutory scheme the ex-

pressed goal of the court is "to interpret a statute 'so that all of its provisions are read in harmony and are effectuated.'" *Id.* (citing *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475, 480 (Me.1982).

Applying these principles to the issue here presented leads to the conclusion that there is no disharmony in the language of this statute as applied by the Board to the facts of this case. By its decision the Board did not determine whether the methodology used by the Bureau to determine the equalized just value [based on 100% of current market value] of a hydroelectric facility should be current replacement cost less depreciation or historical cost less depreciation. It did determine that as between the three facilities located in Somerset County, it found no justification for not applying the same methodology to each of the three facilities. In making "its own reasonable determination giving due weight to the claims of the municipality and the Bureau of Taxation," (§ 272(3)) the Board properly considered that methodology used by the Bureau as to two of the three facilities, and adopted that same methodology[3] in arriving at its own determination as to the equalized just value of the third. In its application, this resulted in a lowering of the Bureau's valuation of the Madison facility.

Nothing in section 272, explicitly setting forth the powers of the Board, or elsewhere in the statute prohibits the Board from adopting the methodology used by the Bureau in making its own determination of "equalized just value ... based on 100% of the current market value" (§ 305(1)) of the hydroelectric facility. Contrary to the conclusions of the Court, I believe Madison's claim was directed to the proper forum and that the Board acted within its statutory authority in the remedy afforded to Madison.

I would affirm the judgment.

---

**3.** Neither the record nor the statute under consideration indicates that the methodology used by the Bureau to determine the equalized just

value of real or personal property is not left to the determination of the Bureau.